## Everman's Administrator v. Louisville & Nashville Railroad Company.

(Decided April 22, 1927.)

### Appeal from Estill Circuit Court.

1. Evidence.—In action against employer to recover for death of employee, alleged to have resulted from employer's negligence, statement made by deceased after receiving injuries, if made with mature deliberation, was self-serving, and inadmissible, unless part of res gestae.

2. Evidence.—In action against employer to recover for death of employee, alleged to have resulted from employer's negligence, statements by deceased after being injured, made to witness who had left him some three-quarters of an hour before, during which time no one had seen deceased, held inadmissible, as part of res gestae.

3. Negligence.—If injuries or death of one, claiming to be damaged because of defendant's negligence, under proven facts, may be as consistently attributable to a cause for which defendant was not responsible equally as with negligence, the case should not be submitted to jury.

4. Master and Servant.—In action against employer for death of employee, alleged to have resulted from injuries sustained in fall from platform or steps leading thereto by reason of employer's negligence in not providing banister, evidence held insufficient for jury.

C. F. SPENCER for appellant.

WOODWARD, WARFIELD & HOBSON, HUNT. NORTHCUTT & BUSH, R. R. FRIEND and ASHBY M. WARREN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On April 16, 1925, Henry T. Everman, deceased, was about 35 years of age and employed by appellee and defendant below, Louisville & Nashville Railroad Company, as a pumping engineer in the operation of its pumping station in or near Ravenna, in Estill county, for the purpose of furnishing water for its yards at that place. His hours of work were from 6 a. m. to 6 p. m. The pumping station was constructed on the banks of the Kentucky river near the water's edge, and it consisted of a concrete cylinder, something after the fashion of a large silo, and about 40 feet in length perpendicularly with all of it but about 11 feet below the surface of the ground, and with a frame building on its top, the en-

trance into which was by means of a stairway some 10 or 11 feet from the ground step to the top one and the latter landed on a concrete platform about 2½ or 3 feet wide and about 4½ feet long and which extended to the door into the frame building on top of the cylinder. The pumping machinery was in the bottom of the cylinder and it was reached by means of a ladder down the cylinder from some part of the frame building on its top. The night operator of the pumping station, a Mr. McPherson, left the plant at about 6:15 a. m. on the morning of the day mentioned with decedent in charge. McPherson returned in about 3 hours (9:15 a. m.) and the latter was complaining of a severe headache and had in his possession a box of aspirin tablets and inquired of McPherson as to how many and how frequently they should be taken to allay the headache. McPherson left and at the expiration of three-quarters of an hour he again returned and found decedent on the ground unconscious and about 2 or 3 feet from the foot of the steps. He was taken to his home and died that night at about 11 o'clock.

The appellant and plaintiff below qualified as his administrator and brought this action against defendant to recover damages for his death upon the ground that it was produced by the negligence of defendant in failing to provide him with a safe place in which to perform his work and by reason thereof he was caused to fall from the platform or the steps and thereby sustained the injuries resulting in his death. The answer was a denial of the material allegations of the petition with pleas of contributory negligence and assumption of risk. We do not find in the record any reply, nor any order of court controverting those pleas, but for the purposes of the case we will treat them as denied. The court, at the conclusion of plaintiff's testimony, sustained defendant's motion for a peremptory instruction in its favor, followed by a verdict as so directed, and, from the judgment dismissing the petition after plaintiff's motion for a new trial was overruled, this appeal was prosecuted.

There was discovered on decedent's head and also on his neck slight enlargements, but the record does not disclose that there were any abrasions of the skin at either place.

There were also bruises on his breast. There was no autopsy and the record is by no means clear as to whether any physical injuries produced decedent's death, though in disposing of the case we will assume that whatever happened to him on that occasion produced the injuries from which death ensued.

McPherson, the only witness who explained the position of decedent, testified that some 10 minutes or more after he was first discovered he regained, to some extent, his consciousness and commenced to inquire for the witness who had left him some three-quarters of an hour before. The witness then was permitted to testify over the objections and exceptions of defendant thus:

"Q. Did he say anything what was the matter with him? A. Well, he said, I asked him how, if he fell, and he said, he kindly grunted and said, 'Yes;' just that way kindly; and I said, 'How did you fall, clear from the top?' and he said: 'Yes; from the top.'"

From the entire testimony in the case it is exceedingly doubtful if decedent ever gained sufficient consciousness to know what he was talking about; but, waiving that point, it is quite clear that the statement, if made with mature deliberation, was self-serving, and not admissible, unless it was part of the res gestae. It is equally clear that it was not brought within that rule. It is not made to appear how long after the accident to decedent, whatever produced it, the statement was made by him. No one had seen him for as much as three-quarters of an hour and we are cited to no case justifying the admission of the statement under the res gestae rule. With that statement eliminated, there is absolutely no testimony as to what produced the decedent's condition when found by the witness McPherson. However, if we should admit the competency of decedent's statement to McPherson, it would then serve only to establish the fact that he sustained a fall from either the platform or some portion of the steps leading thereto. But as to how he fell or what produced or caused him to do so the record is absolutely silent, since in his alleged res gestae statement he made no effort to explain the reasons for his falling. It was proven that the steps had banisters on only one side and it is argued that it was negligence in

not providing a banister for the other side. The steps were between 2½ and 3 feet long and we are not prepared to say that it would be negligence to not have both sides banistered; but, be that as it may, there is no evidence express or circumstantial to prove that decedent fell from the side of the steps where there was no banister, or, if he did do so, that his fall was not produced by some cause other than the absence of a banister. The same is true with reference to the banister on one side of the concrete platform. Indeed, we are unable to learn from the record whether the platform extended away from the side of the cylinder, or whether its unbanistered side was the wall of the cylinder. In describing the steps and platform, counsel for plaintiff, in his brief says:

"The entrance into the structure was by steps from the ground extending up to the side about 12 or 15 feet (11 feet according to the testimony) to a narrow landing on a platform about 2½ feet wide, running along the side of the wall a distance of about 4½ feet. . . . The handrail extended up to the side of the structure, and the platform turned to the right, extending to the door or the entrance."

That description would seem to indicate that one side of the platform was also the wall of the cylinder, which, if true, there would be no necessity of a banister on that side. However, if we should assume that such was not the case as to the platform, then what we have observed with reference to the steps would likewise apply to it. The case then comes to this: Decedent was found near the foot of the steps with indications upon parts of his body that he had sustained some bruises, but from what cause or how they were inflicted is a matter of the barest speculation. If we should, however, assume that they were caused by a fall from either the steps or the platform, we, then, get no nearer to the establishing of negligence on the part of defendant, since it is again wholly speculative as to how decedent was caused to fall. The case, therefore, comes clearly within the rule which this court has declared and applied in a number of cases, some of the latest of which are L. & N. R. Co. v. Stidham's Admr'x, 187 Ky. 139, 218 S. W. 460; Gregory's Admr'x v. Director General of Railroads, 195 Ky. 289, 242 S. W. 373; Lee's Adm'r v. Hines, 202 Ky. 240, 259 S. W. 338; L. & N. R. Co. v. Vanover's Adm'r, 203 Ky. 390,

262 S. W. 606, and Daugherty's Adm'r v. L. & N. R. Co., 206 Ky. 325, 267 S. W. 151. Many others are cited in those opinions and it is unnecessary to repeat them here. It is sufficient to say that they establish the rule that, if the injuries to, or the death of, the one claiming to be damaged because of defendant's negligence, under the proven facts, may be as consistently attributable to a cause for which defendant was not responsible equally as with its or his negligence, then the case should not be submitted to the jury. Indeed, in most, if not all of the cited cases, the inference as to how and why the involved accident happened is much stronger in favor of plaintiff than is shown by this record. What we have said up to this point does not include any consideration of the possibility of decedent's fall (if he sustained one) being produced by the effects of his headache and the aspirin that he was taking to relieve it.

We therefore conclude that the court properly sustained the motion for a peremptory instruction, and the judgment is affirmed.