## Codell Construction Co. v. Neal et al.

(Deadied Feb. 12, 1935.)

D. L. PENDLETON for appellant.

M. C. REDWINE, L. C. LITTLE and RICHARD P. DIETZMAN for appellees.

Opinion of the Court by Judge Rees—Affirming.

This is an appeal from a judgment affirming an award of compensation made by the Workmen's Compensation Board.

The deceased, John R. Neal, was burned to death on the night of February 11, 1933, while in the employ of the Codell Construction Company, which was engaged in the construction of a highway in Clay county. The construction work was commenced early in July, 1932, and Neal, who was employed by appellant as a night watchman, had been continuously on duty at night from the commencement of the work until the day of his death. It was Neal's duty as night watchman to patrol that part of the highway where the machinery was located to protect appellant's property from injury or theft, and to oil and grease the machinery.

In October, 1932, Neal built a small structure referred to in the record as a shack. This shack was 6 feet long, 4 feet wide, and about 4½ feet high, and was built on runners so that it could be moved as the location of appellant's machinery and equipment

was changed. It had 2 by 4 uprights at the corners, and nailed to these uprights were thin boards extending up about 2 feet from the ground. The rest of the walls and the top were covered with canvas or tarpaulin. The only opening in the shack was a door in one end. Along the side to the right of the door was a bench or shelf nailed to the runner. Neal had made a stove out of a round can. A section of pipe with an elbow was inserted in the improvised stove, and this pipe discharged the smoke through the canvas part of the rear wall. When the accident occurred which resulted in Neal's death, the shack was located on the right of way of the road under construction about 30 or 40 feet from the home of Mrs. Mary Chisholm, where Neal boarded and had a room. He slept during the day, and Mrs. Chisholm usually called him about 4 o'clock in the afternoon. He started to work about 5:30 o'clock on the afternoon of February 11, 1933, and as he was leaving the house he told Mrs. Chisholm that he had bought shellac in London and that it cost him ten cents more for each can than he paid at home. He had some things under his arms at the time, but she was unable to say what they were. While Neal was employed by appellant, he made shaving mugs, pipes, boxes for razor blades, and other trinkets and novelties, shellacked them, and sold them to his fellow employees and to persons in London and Manchester. Neal was not seen after he left the boarding house until he was found dead later in the evening. Just before leaving the boarding house he showed Logan Standifor, a fellow employee, several razor cases he had made and told him he was going to shellac them during the night.

About 10:30 o'clock, Finley Hubbard, whose home was about 100 yards away, discovered that the shack was on fire, and he and three or four others rushed to the scene. The inside of the shack was a mass of flames. When the door was opened Neal could be seen to the left of the door in a kneeling posture with the back of his head resting against the south wall and his arms drawn up in front of his chest. Hubbard thus described his condition:

"His face and head, the flesh was all burned off, and one of his arms was burned off, I believe his left arm, somewhere near his elbow, and the other

hand was burned off, his body was all badly burned, his joints—some of them were burned in two at the knees."

The burning shack was pushed over, and the fire was put out with water. An examination of the spot where the shack had stood was made and the bowl of Neal's lantern was found within a foot of his body, and two pint cans that had contained shellac were found. The tops were off, but whether or not they had melted off the witnesses were unable to say.

It is appellant's contention that there is no evidence to support the finding of the Workmen's Compensation Board that the deceased met his death by reason of an accident arising out of and in the course of his employment; that it was his duty continuously to patrol the road, and the only inference deducible from the evidence is that he met his death while engaged in work for his own gain and benefit, which was wholly unconnected with anything relating to his employment as night watchman. It is argued that since the facts are undisputed the question becomes one of law, and the finding of the board is a finding of law and not of fact, and, therefore, is subject to review by the courts.

While there is no dispute as to the material facts, there is a sharp dispute as to the inferences to be drawn from these facts. The appellees had the burden of proving that Neal came to his death as a result of an accident arising out of and in the course of his employment, but they were not required to produce direct evidence of that fact. If evidence is produced which will reasonably sustain an inference or raise a presumption in support thereof, it is sufficient. Raymond Construction Company v. Little, 255 Ky. 461, 74 S. W. (2d) 926; Hardy-Burlingham Mining Company v. Hurt, 253 Ky. 534, 69 S. W. (2d) 1030; Cairel v. Hall-Luton Coal Company, 243 Ky. 168, 47 S. W. (2d) 1063; Coleman Mining Company v. Wicks, 213 Ky. 134, 280 S. W. 936; Black Mountain Corporation v. Humphrey, 211 Ky. 533, 277 S. W. 833; Big Elkhorn Coal Company v. Burke, 206 Ky. 489, 267 S. W. 142, 143; State Highway Commission of Kentucky v. Westerfield, 257 Ky. 274, 77 S. W. (2d) 951, decided December 4, 1934.

Neal's death occurred within his usual working hours and on his master's premises at a place where

he had a right to be if he was there for the purpose of warming himself, as claimed by the appellees. He constructed the shack early in October as cold weather was approaching, and it is satisfactorily shown that he used it on cold nights for the purpose of warming himself. The shack was built and used by him with the knowledge of his employer's foreman and superintendent, and as the construction work progressed it was moved by appellant's employees. It was extremely cold on the night of February 11, 1933, and it is conceded that the thermometer registered below zero. Appellant's own witnesses admitted that it would have been necessary for the deceased to warm himself by a fire from time to time during the night. There is no evidence that he had failed to perform his duty of patrolling the road during the night.

It is a firmly established rule that acts necessary to the comfort and convenience of the employee while at work, though strictly personal to himself and not acts of service, are incidental to the service, and injuries sustained in the performance of such acts are deemed to have arisen out of the employment. In Honnold on Workmen's Compensation, vol. 1, c. 381, it is said:

> "Acts of ministration by a servant to himself, such as quenching his thirst, relieving his hunger, protecting himself from excessive cold, performance of which while at work are reasonably necessary to his health and comfort, are incidents to his employment and acts of service therein within the Workmen's Compensation Acts, though they are only indirectly conducive to the purpose of the employment. Consequently no break in the employment is caused by the mere fact that the Workman is ministering to his personal comforts or necessities, as by warming himself, or seeking shelter, or by leaving his work to relieve nature, or to procure drink, refreshments, food, or fresh air, or to rest in the shade."

In Allen v. Columbus Mining Company, 207 Ky. 183, 268 S. W. 1073, the decedent was burned while warming himself at a forge which was located on the master's premises, but some distnce from the place where the employee's duties required him to be. It was held that his injuries arose out of and in the course of his em-

ployment. In Moore v. Lehigh Valley Railway Company, 169 App. Div. 177, 154 N. Y. S. 620, the railroad employee sought shelter under a box car during a violent rainstorm. An engine moved the car, and both of claimant's legs were cut off. It was held that this act was a necessary incident of his employment, and the mere fact that he was guilty of negligence in going beneath the car did not take him outside of his employment. In State Treasurer v. Ulysses Apartments, 232 App. Div. 393, 250 N. Y. S. 190, an employee lit a cigarette and caught fire while using an inflammable paint remover, and compensation was allowed. To the same effect are A. C. Lawrence Leather Company v. Barnhill, 249 Ky. 437, 61 S. W. (2d) 1; Northwestern Iron Company v. Industrial Commission, 160 Wis. 633, 152 N. W. 416; Malandrino v. Southern New York Power & Railway Corporation, 190 App. Div. 780, 180 N. Y. S. 735; Whiting-Mead Commercial Company v. Industrial Accident Commission, 178 Cal. 505, 173 P. 1105, 5 A. L. R. 1518; Steel Sales Corporation v. Industrial Commission, 293 Ill. 435, 127 N. E. 698, 14 A. L. R. 274; Archibald v. Workmen's Compensation Commission, 77 W. Va. 448, 87 S. E. 791, L. R. A. 1916D, 1013.

In the circumstances, Neal clearly could use the shack for the purpose of warming himself without stepping out of his master's employment, and while thus engaged it was immaterial to appellant how the time was occupied, whether by reading, smoking, making trinkets, or otherwise.

Appellant insists that the only reasonable inference deducible from the facts and circumstances is that Neal at the time and place of his injury was engaged in his own business, and that his death resulting from such an injury is not compensable under the Workmen's Compensation Act (Ky. Stat. sec. 4880 et seq.). The accident occurred within the employee's working hours and on his employer's premises, and was caused by fire. The fire may have started from the lantern used by Neal while patrolling the road, or from the stove. Appellant argues that the fire was caused by an explosion of a can of shellac which was being used by Neal for his own purposes. The only evidence in the record as to the explosive quality of shellac was offered by the appellees, and is to the effect that common commercial shellac, while inflammable, will not explode. The facts

and circumstances were also susceptible of the inference that the stove or lantern caused the fire at a time when Neal was warming himself as he had a right to do under the circumstances, and that the accident, therefore, arose out of the employment.

An award may not be predicated upon a possibility which is mere surmise and conjecture, but it may be predicated upon evidence from which reasonable and legitimate inferences may be deduced. In compensation cases it will be presumed that employee followed usual course of carrying out employer's business at time of injury. Consolidation Coal Company v. Branham, 243 Ky. 780, 49 S. W. (2d) 1035. The rule is thus stated in Flucker v. Carnegie Steel Company, 263 Pa. 119, 106 A. 192, 194:

> "Where no facts appear indicating anything to the contrary, it may be presumed logically that an employee at his regular place of service, during his usual working hours, is there in discharge of some duty incident to his employment; and, when the dead body of an employee is found on the premises of his employer, at or near his regular place of service, under circumstances fairly indicating an accidental death which probably occurred during the usual working hours of the deceased, the inference may fairly be drawn, in the absence of evidence to the contrary, that the employee was injured in the course of his employment."

In Tully v. Gibbs & Hill, 171 A. 313, 314, 12 N. J. Misc. 275, Tully was employed by Gibbs and Hill as a night watchman. On the morning of June 22, 1932, he was found dead at or near the place of his employment on the tracks of the Pennsylvania Railroad Company. He was found with his left shoulder in contact with a third rail, and the medical testimony was to the effect that his death was due to shock. In affirming the finding of the Workmen's Compensation Bureau that Tully's death resulted from an accident that arose out of and in the course of the employment, the Supreme Court of New Jersey said:

> "On this first point, much testimony has found its way into the record as to what the decedent was doing immediately prior to or at the time he met the accident which caused his death. It is sug-

gested that he may have gone to the car seeking shelter from the heavy rainstorm; or that the decedent may have considered the Hudson & Manhattan Railroad car, which apparently was lying there for the night, an advantageous spot from which to keep watch over the equipment that he was engaged to watch and which was located at three different points on the north side of the railroad 'cut'; or it was further suggested that the deceased may have been going to or returning from a toilet on the southerly side of the right of way at the time that he met his death.

"From the facts and circumstances in this case, we think that the deputy commissioner was justified in drawing the inference that the accident to the decedent arose out of the decedent's employment. Muzik v. Erie R. Co., 85 N. J. Law, 129, 89 A. 248; De Fazio's Estate v. Goldschmidt Detinning Co., 87 N. J. Law, 317, 95 A. 549.

"When an employee, as here, is found dead from accident, and there is no evidence offered as to just how the death occurred, the court will presume that the accident causing the death was one that arose out of and in the course of the employment. Here it was perfectly consistent with the performance of his duty, under the circumstances that prevailed, that the deceased should be where he was at the time of the occurrence which resulted in his death."

The appellant relies upon the rule announced in negligence cases such as Everman's Administrator v. L. & N. Railroad Company, 219 Ky. 478, 293 S. W. 977, that where the plaintiff's own evidence fails to show with reasonable certainty the cause of the injury that supports with equal plausibility an inference of negligence and an inference of innocence the presumption favors the latter. As pointed out in Vincennes Bridge Company v. Poulos, 234 Ky. 243, 27 S. W. (2d) 952, 953:

"The reason for the rule is that negligence will not be presumed, and, if the plaintiff's own evidence is equally consistent with the existence or non-existence of negligence, the presumption prevails in favor of innocent rather than of wrongful conduct. But that rule has no application when

the conflicting theories do not arise from the plaintiff's evidence, but the one indicating no negligence is deduced from the evidence introduced by the defendant."

In Big Elkhorn Coal Company v. Burke, supra, a compensation case, it was said:

"Although the finding of the Board was based entirely on circumstantal evidence, yet such evidence is sufficient when the facts and circumstances of the case are so related to each other that an inference of liability may be fairly drawn without being based upon mere guess, conjecture, or surmise.

"The Workmen's Compensation Act requires that it be liberally construed, and so, if the facts establish that degree of proof which produces conviction in an unprejudiced mind, that is all that is required. The decedent while on the way from the room in the mine where he worked to the outside was still in the course of his employment. Barres v. Watterson Hotel Co., 196 Ky. 100, 244 S. W. 308. And this court cannot say that there is an entire absence of evidence to support the Board's finding that the decedent came to his death in the way it so found and by an accident arising out of [and in] the course of his employment.

"Appellant urges that this case comes within that line of familiar authorities which hold that the mere finding of a dead body on the railroad track will not raise the presumption of the person's being killed by the negligence of the carrier. The distinction between them is clear. In the railroad and kindred cases, it is necessary to establish that the death was occasioned by the negligence of the defendant. In these workmen's compensation cases, it is only necessary to prove that the death was accidental and that the accident arose out of and in the course of the employment."

In the instant case, the evidence was sufficient to authorize the inference that Neal's death resulted from an accident arising out of and in the course of his employment.

The judgment is affirmed.