## Black Mountain Corporation v. Stair et al.

(Decided Jan. 25, 1938.)

B. M. LEE for appellant.

GOLDEN & LAY for appellees.

OPINION OF THE COURT BY JUDGE BAIRD—Affirming.

Rufus Stair obtained the following judgment in the Harlan circuit court against the Black Mountain Corporation:

"It is therefore the judgment of the court that Rufus Stair recover of the Black Mountain Corporation the sum of $15.00 per week for a period of fifty-two (52) weeks, excepting the first week thereof, and $4.80 per week for a period of two hundred eighty-three (283) weeks, said payments to begin and to be calculated from the date of the injury which was the 19th day of February, 1936; and the plaintiff, Black Mountain Corporation shall be credited with whatever amount of compensation has heretofore been paid to Rufus Stair, but it shall pay six per cent (6%) interest upon all past due payments until paid; * * *."

The Black Mountain Corporation appeals. The ground relied upon for reversal is whether or not there was any competent evidence to sustain the finding of the workmen's compensation board, either as to the permanent disability and percentage thereof, or as to the actual injuries received, upon which the board arrived at its conclusion.

The facts are: That on or about the 19th day of February, 1936, appellee was working in appellant's mine, when a coal bump struck him and injured him on the right knee, right arm, the right side and back of the head, cut his knee, injured his right eye, causing it to swell and become bloodshot, broke a bone in his right arm three inches below the elbow, his shoulder was "kinda paralyzed," and his right knee dislocated. The ankle of the injured knee was weak; in fact, he was unconscious for quite a while. He was carried to a hospital, where he remained for some time. Later, he was discharged and ordered to return to his work. He was paid for the time he was confined and until his discharge the sum of $369.56, which was for about 24 weeks. On his return to work, he soon found that on ac-

count of his injuries, he was unable to work longer than one week. In doing his work in the mine he was compelled to be on his knees or in a stooped position most of the time. His injured knee and arm that had been broken gave him much pain and suffering and he suffered so severely from the pain of both limbs that he was compelled to give up his work altogether. He then filed his application before the Workmen's Compensation Board for an award. The board heard the evidence offered by both appellant and appellee, and on the 20th day of July, 1937, rendered an opinion and award.

Counsel for appellant complain that the board made a misstatement of the evidence in reaching the conclusion that appellee's right leg was broken above the right knee, and upon that theory arrived at an award of 40 per cent. partial permanent disability to the body of appellee as a whole, because there is no evidence whatever that the bone was broken just above the knee or at all. We are unable to agree with counsel.

Appellee testified that on account of his injured right leg and his right arm that had been broken, he was totally unable to perform the manual labor that he had been performing, prior to his injuries, in working in the mine; that he had never been relieved of pain and suffering; that in going to the mine he was compelled to use a stick and "hop" along and get there the best way he could; that he was unable to do any kind of work, except just "potter" around the house; that he was totally disabled to do the work of a miner.

His testimony was fortified by the evidence of Dr. Mason Combs, a physician of 30 years' experience, and fully competent to pass upon injuries of this kind. He, in substance, stated that he took an X-ray picture of Stair's leg; that he found that the right knee was ankylosed; that on account of that injury, he was unable to flex his leg so as to form a right angle with the femur or thigh bone; that the lower end of the femur bone was in a ragged condition, immediately above the knee joint; that between the femur or thigh bone and the leg bone, the knee joint had been torn loose at that point; that in his judgment, there had been a fracture of the capsule of the knee joint. Dr. W. P. Cawood, a witness for appellant, after making an X-ray examination of appel-

lee's leg, stated, in substance, the same thing. It is true no witness stated the femur or thigh bone was broken between the hip and knee, except in the way and manner described by these doctors. It is our opinion that even if the femur was not broken, the evidence is sufficient to base a conclusion that the lower end of the femur was fractured; it being in a ragged, broken condition. The doctors, in fact, practically agree that the injury to the leg and arm and knee joint, including the fracture of the capsule joint of the knee, was sufficient to produce to a degree total and permanent disability. The disagreement between the doctors was to the degree of the disability. Dr. Combs positively placed the disability at 100 per cent. Dr. Cawood estimated the disability from 15 per cent. to 50 per cent. to the arm, and 15 per cent. to the leg, while Dr. Giannini, another physician introduced by appellant, estimated the injury to be not in excess of 5 per cent. permanent disability.

The sole question then before the board was the extent of the permanent disability. From the whole of the evidence heard, the board fixed the disability at 40 per cent., instead of 100 per cent., as total for a period of 52 weeks and awarded appellee the sum of $15 per week for that disability, and $4.80 per week for a period of 283 weeks. The testimony as to the total disability was conflicting and contradictory. The conclusion reached by the board and affirmed by the Harlan circuit court will not be interfered with by this court.

We have repeatedly stated in a number of opinions that the finding of facts on the part of the board is conclusive on the court if supported by any evidence of substance. In fact, we have held in an unbroken line of decisions that the decision of the board upon the facts will not be disturbed if there is any legal evidence to sustain them, even if the proof preponderates against the board's findings. This court has often said that unless there is an entire absence of substantial and credible evidence to support the board's finding of facts, this court, in the absence of fraud, cannot disturb it. Andrews Steel Company v. McDermott, 192 Ky. 679, 234 S. W. 275; Valentine v. Weaver, 191 Ky. 37, 228 S. W. 1036; Ames Body Corporation v. Vollman, 199 Ky. 358, 251 S. W. 170; Robinson-Pettet Company v. Workmen's Compensation Board, 201 Ky. 719, 258 S.

W. 318; Employers' Liability Assurance Corporation et al. v. Gardner et al., 204 Ky. 216, 263 S. W. 743, 744; Lee Clay Products Company v. Stamper et al., 268 Ky. 786, 105 S. W. (2d) 1069; Ajax Coal Company v. Collins et al., 269 Ky. 222, 106 S. W. (2d) 617.

Counsel base their whole contention on that part of the board's award which is as follows:

"Rocks, estimated to weigh 150 to 200 pounds, crashed against his body, breaking his right arm a few inches below the elbow, and his right leg just above the knee."

Counsel insist that appellee suffered no fracture of the right leg just above the knee. As before stated, the bone of the thigh or femur was not broken above the knee and below the hip, but the proof is that there was a fracture and a complete break of the bone at the end of the thigh bone or femur. It is true that it was not called a broken bone, but the witness Dr. Combs stated that the capsule joint of the knee had been torn loose at that point, and on cross-examination stated that in his judgment and opinion there was a fracture of the capsule joint of the knee. It is hard to conceive that if the femur or thigh bone had been broken above the knee, such a break would have caused more pain or would be more liable to deprive one of their ability to labor than the injury referred to by Dr. Combs. The femur or thigh bone projects into the knee joint and is called in medical terms, as suggested by counsel for appellee, "epiphysis." From the description given by the doctors, that is, that the end of the femur or thigh was "ragged" and that the injury was necessarily a fracture of the end of the bone that forms the upper portion of the knee joint, such an injury is often more serious and causes more pain and suffering than the bone in the thigh above the joint.

In any event, the testimony of Dr. Combs, and the other physicians, is to the effect that the capsule joint of the knee was broken loose, that the knee joint was ankylosed, indicating that the fracture of this capsule joint was the direct cause of the injury. However, if the bone was not, in fact, fractured, because the board said in its report that the leg was broken above the knee, would not be sufficient reason for reversing the

case. The proof is that Stair suffered a severe injury to his knee, and the injury was so serious, and in such a condition, that each of the doctors advised him not to put any weight on it or to use it at all. The question as to whether the leg was broken above the knee or merely ankylosed, or that there was only a fracture of the capsule joint, is too technical for the court to consider.

As we have often said, and again say, that unless there is an entire absence of substantial and credible evidence to support the board's finding of facts, this court, in the absence of fraud, cannot disturb it. See authorities, supra. It then follows that it is our judgment no error has been committed.

Wherefore, the judgment is affirmed.