# Jefferson County Stone Co. v. Bettler et al.

January 21, 1947.

Rehearing denied March 25, 1947.

B. H. Farnsley, Judge.

Davis, Boehl, Viser & Marcus for appellant.

Lawrence S. Grauman, Leon Shaikun and William A. Perry for appellees.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

The trial court rendered judgment affirming a Workmen's Compensation Board decision which awarded death benefit compensation to two dependent children, Theodore Bettler, Jr., and Jerald Bettler, the appellees. This appeal has been perfected by Jefferson County Stone Company, the appellant employer.

The question presented for decision was, and now is, that of whether or not the death of appellant's em-

ployee, named Theodore Bettler, Sr., resulted from an accident which arose out of his employment and in the course of same.

The facts, such as are uncontroverted, appear to be that appellant is a small, family-owned corporation, of which Emil Berry is president, manager and general operator; that Berry took a lease on the land where appellant operates its rock quarry and thereafter ·sublet part of this leased land to appellant for its operatiohs with the arrangement that appellant should pay Berry royalty on the rock it removed; that a part of this principal lease contained a small cottage of 3 or 4 rooms, which cottage was approximately 300 yards from the quarry machinery and was enclosed, together with the quarry proper, by a fence, that the employee Bettler had been living in this cottage, rent free, since 1939, when Berry first began operating this quarry; that Bettler worked for appellant as a maintenance man at a salary of $30 per week and had, so far as this record shows, no definite schedule of working hours; that Bettler's duties required him to repair appellant's machinery at any and all hours of the day or night, when repairs were needed; that Bettler carried the keys to the gates of appellant's premises and to all the other locked places on appellant's property and was required to lock everything up at the close of each day's activities; that Bettler lost his life when an accidental fire of unknown origin destroyed this cottage in which he and his two motherless boys, ages 12 and 14, these appellees, lived, the fire having occurred around 3 o'clock in the morning of February 2, 1943; that Bettler had performed some duties for appellant on the previous day, had ceased his active work around 5 or 6 o'clock in the evening of February 1, 1943, and still later had locked up the appellant's property before retiring for the night around 9 P. M.; that Bettler had been drinking to some extent on February 1, 1943, but had not been in an intoxicated condition during the afternoon or evening of that day; that Theodore Bettler, Jr., was the first one awakened by the outbreak of this fire and that he in turn aroused his brother and his father; that the two boys escaped through a broken window, while the father, appellant's employee, attempted to go through a door leading to the burning kitchen, either for the purpose of getting

water to throw on this fire or for some unknown purpose, and thereby lost his life.

The two issues of this case seem to be (A) whether or not this accident and death occurred on appellant's premises and thus arose in the course of Bettler's employment and (B) whether or not this accident and death occurred as a result of the duties of this employment and thus arose out of such employment. In other words, the necessities of this case require us to judicially interpret the meaning of the phrase, "Accident arising out of and in the course of his employment," which phrase is found in KRS 342.005 relating to the subject of workmen's compensation.

## Question A.

Did this accident and death occur on appellant's premises? For most practical purposes, Berry and appellant appear to have had a single rather than dual, identity. Berry was president, manager and general operator of appellant, a small family corporation. What Berry did, the appellant fully knew at all times and what the appellant did, Berry fully knew at all times. The appellant knew that Berry took this entire lease for appellant's general benefit and placed one of appellant's employees in the rent-free cottage located on a portion of such lease and adjoining appellant's quarry. And, although Berry says that he let appellant have only that portion of the lease that did not include the cottage, yet that arrangement appears to have been principally a thought in Berry's mind. We reach this conclusion because of the fact that Berry introduced in evidence no written sublease from himself to appellant. Neither did this appellant itself introduce any writing of any kind or any corporate record of any kind showing that Bettler's cottage home was not a part of appellant's operating property. We can conceive of no plausible reason for the possession of this cottage individually by Berry in a purely personal capacity, especially so in view of the fact that he derived no rent whatever from the cottage. There is an old saying that "the tail goes with the hide," and this must be particularly true when there is no apparent reason for separating the two. Now we see no reason to separate this cottage from appellant's other operational activities, no reason to separate the two

merely as a result of the unrecorded thought of someone that such a separation arrangement had been intended. We think it would be narrow, unjust and wrong to consider that this cottage was not a true part of appellant's premises at the time of this accident and under the circumstances of this case. However, even though it were conceded that this cottage is no part of appellant's premises but is merely adjacent thereto, yet this accident could legally be considered to have arisen in the course of Bettler's employment if it has been demonstrated that the practical necessities of such employment required Bettler to live in this cottage. See Rex-Pyramid Oil Co. v. Magan, 287 Ky. 459, 153 S. W. 2d 895. Although Berry testified that there was no requirement or necessity that Bettler live in this cottage, yet it seems clear that the occupancy of this handy cottage by Bettler was a thing of practical necessity to his comfort and convenience while performing the duties of his job as maintenance man and general custodian of appellant's property. It is a firmly established rule that acts necessary to the comfort and convenience of an employee on his job, though such acts are strictly personal to the employee and are not acts of service to the employer; yet such acts are considered incidental to the employment, and therefore accidents arising from the performance of such acts are compensable. See Codell Construction Co. v. Neal, 258 Ky. 603, 80 S. W. 2d 530. And so it seems that even though Bettler's election to live in this cottage, which was either a part of appellant's premises or was adjacent thereto, may be considered to have been a strictly personal choice, yet it was a thing of comfort and convenience to himself while he was serving as maintenance man and general custodian and while he was on call at all hours. Therefore, this accident and death arose, we think, in the course of the employment.

## Question B.

Did this accident and death occur as a result of the duties of this employment? The mainly contested issue of this case was that of whether or not Bettler performed the services of a watchman for appellant. Berry stated that Bettler was not a watchman. But we find that another witness, who formerly acted as Bettler's helper, stated that Bettler's work was partly that of a watchman

and further stated that such work extended over all hours of the day and night. In any event, appellant certainly had valuable machinery and equipment on its premises and it appears that if Bettler did not perform appellant's watching and guarding service, no other person did so. He seems to have been the only person who remained on the place. He carried the keys, shut the gates, locked up appellant's property after regular working hours, continued his presence in this cottage, which was either at or upon appellant's premises, while the hands of the clock made their double circuit during each day. Although Berry did not conclude that this kind of a job constituted that of a watchman and although he called Bettler a maintenance man and not a watchman, yet it seems to us that all the proven circumstances made Bettler a watchman in fact and a watchman in deed, regardless of what name might have been placed upon him. It was that famed bard of Avon, named Shakespeare, who called our attention to the unimportance of a mere name, when he said:

"What's in a name, That which we call a rose by any other name would smell as sweet."

The beauty and fragrance of a rose make it a rose. The name does not do so. The activities of a watchman make him a watchman. The name does not do so.

If Bettler performed some of the duties of a watchman, as one witness stated and as the circumstances appear to confirm, then it was clearly necessary for Bettler to have a shelter and the warmth of a fire in February weather, to get some sleep during the hours of each day. No man can habitually work around the clock. Appellant furnished no relief man for Bettler. Necessarily, he had to sleep through part of the hours during which he was subject to call and during which he was serving appellant as custodian, maintenance man or watchman, whichever name we may choose to use in describing Bettler's services to the appellant.

It has been held that where a chef, who slept in his own room in a part of his employer's hotel provided for the employees, was suffocated by fire, while in such room, his resulting death was rightly deemed to have been caused by an accident arising out of the employment within the meaning of the compensation law. Gil-

iotti v. Hoffman Catering Co., 246 N. Y. 279, 158 N. E. 621, 56 A. L. R. 500.

It has also been held that an employee driver, who came inside to warm after working for some time outside in the cold and who sat down near a fire, fell asleep, caught fire and became injured, was entitled to compensation because such accident was one legally arising out of the driver's employment within the meaning of the compensation law. Richards v. Indianapolis Abattoir Co., 92 Conn. 274, 102 A. 604.

Our own court has declared that where an employee is found dead on his employer's premises and during hours of his duty, even though the exact cause of such death is unknown, the presumption will be indulged that the accident which caused such death was one that arose out of the employment and in the course of same. See Codell Construction Co. v. Neal, supra.

In the instant case, we believe appellees produced sufficient evidence to support the following findings of the Workmen's Compensation Board: (1) that this accidental death occurred on appellant's premises; (2) that it occurred during the hours of this employee's duty; (3) that it may be presumed to have occurred while this employee was performing some duty for appellant, such as the duty of extinguishing this fire or the general duty of his custodianship over the appellant's property and premises. We believe these appellees produced evidence sufficient to sustain the inferences of this case, sufficient to raise the presumptions which were indulged.

If the findings and the award of the Workmen's Compensation Board are supported by substantial and competent evidence, then such findings and award are conclusive and they will not be disturbed by this court on appeal. This is a principle too well known to require any citation of authority. However, a few of the later cases supporting this legal doctrine are the following: Three Rivers Oil Corporation v. Harper, 258 Ky. 253, 79 S. W. 2d 972; Hale v. State Highway Commission, 262 Ky. 753, 91 S. W. 2d 23; Black Mountain Corporation v. Stair, 271 Ky. 658, 113 S. W. 2d 17; Black Mountain Corporation v. Seward, 275 Ky. 177, 121 S. W. 2d 4; James v. Elkhorn Piney Coal Mining Co., 277 Ky. 765, 127 S. W. 2d 823; Horn Transfer Line v. Reed, 287

Ky. 536, 154 S. W. 2d 344; Coburn v. Eastern Coal Corporation, 290 Ky. 679, 162 S. W. 2d 537; Department of Highways v. Harrell, 291 Ky. 90, 163 S. W. 2d 287; Utley v. Pence, 295 Ky. 673, 175 S. W. 2d 372.

While this is no doubt a rather close case, nevertheless it was, we believe, one which was correctly decided by the Workmen's Compensation Board. And the judgment of the trial court, affirming the Board's award, was likewise one which was free from error. The award and the judgment are in full harmony with the spirit and purpose of our compensation law.

Wherefore, having found no error in the judgment of the trial court, the same is now hereby affirmed.