## Ford, Bacon & Davis v. Paxton et al.

March 18, 1947.

Roscoe Conkling, Judge.

William Mellor and Bullitt & Middleton for appellant.

Farnsley, Hottel & Stephenson for appellees.

OPINION OF THE COURT BY JUDGE SILER—Affirming.

The trial court affirmed a decision of the Workmen's Compensation Board awarding full death benefit compensation to Annie Crockett Paxton, appellee mother of William Paxton, a deceased employee of Ford, Bacon, and Davis, appellant employer, and the latter appeals.

Appellant contends that the judgment of the trial court should now be reversed (A) because there was no evidence that the appellee mother was at all dependent upon her deceased son, the employee, or, in the alternative, (B) because all the evidence proved, at most, that the appellee mother was only partially dependent on her deceased son.

The question of dependency or of degree of dependency constituted the sole issue in this case. And this type of question is undoubtedly one of fact and therefore the finding of the compensation board relative thereto is conclusive against every one concerned, provided it is supported by competent evidence. Nolan v. Giacomini, 250 Ky. 25, 61 S. W. 2d 1055; Fordson Coal Co. v. Lewis, 266 Ky. 70, 98 S. W. 2d 63.

Only one witness testified in this entire case, viz., Mrs. Paxton, the appellee mother. Mrs. Paxton testified that she is a 76 year old widow, frail in health, under a doctor's care, unemployed except in her own household work at home, living in rented property, having no income-producing investment of any kind. She further testified that she had rented a house in Louisville for the family home at $42.50 per month and had then subrented one room therein to a married daughter, Mrs. Price, and the latter's husband at $29 per month, that

she had boarded and lodged another adult daughter, Cecil, who was employed at a salary of $90 per month, for a board and lodging charge of $25 per month, that her deceased son, who was employed at an average salary of $300 per month, or more, when he lost his life working for appellant, had been accustomed to making regular payments of $50 per month to his appellee mother and also additional, indefinite, monthly payments to her in such amounts as the necessities of this household budget had required to keep in balance. Mrs. Paxton also stated that her deceased son had consistently helped her pay her doctor bills and other bills as they accrued. On cross-examination, Mrs. Paxton admitted that her daughter, Cecil, had likewise followed the custom of paying additional sums of five or ten dollars each month to Mrs. Paxton, but these appear to have been considered as voluntary gratuities or in the nature of "extra gifts," as Mrs. Paxton called them.

The substance of Mrs. Paxton's evidence must have proven one of these three existing conditions: (1) that she was a self supporting woman, or (2) that she was supported by daughters, Cecil and Mrs. Price, either one or both, in co-operation with son William, the deceased employee, or (3) that she was supported by son, William, alone. It is hard to conceive of a 76 year old woman, frail in health, without special qualifications, without financial investments, as having the capacity of her own self support. We think it would have to be presumed, under all the conditions stated, that some one supported Mrs. Paxton. It must be assumed, as a practical matter of good common sense, that Mrs. Paxton, who was aged, sick, untrained, unendowed with property, had to be supported. She must have been dependent upon some person or persons. The evidence showed that daughter, Cecil, out of her meager salary, paid Mrs. Paxton $25 per month plus "extra gifts" and that Cecil received her board and room in return. The evidence also showed that Mrs. Price, the other daughter, paid Mrs. Paxton exactly $29 per month and that Mrs. Price and husband received a room with furnished heat and water in return. The evidence further showed that son William paid Mrs. Paxton $50 per month plus extra expense money as needed and that William received his board and room in return.

We believe that a fair appraisal of this situation and of Mrs. Paxtons evidence on this subject would necessarily lead to the conclusion that Cecil was paying, on regular and consistent basis, for the actual cost of her own upkeep. The $25 per month could have done no more in these times than merely pay Cecil's way. Cecil's monthly, unrequired "extra gifts" of differing amounts were nothing more than a daughter's periodic benevolences and remembrances to an aged mother. The $29 per month paid by Mrs. Price and husband was just about the value of a room rented to two persons there in Louisville. It does not seem that either the $25 per month plus "extra gifts," coming from Cecil, or the $29 per month, coming from Mrs. Price, could have caused any surplus to accrue, above actual expenses entailed, so as to leave something additional in hand for the support of this frail, elderly mother, so as to furnish her with needed medical attention and the other necessities of her living. It would seem to be significant that William, the deceased son and employee, did not merely pay $25 per month, like his sister, for his board, but rather he paid in a total of $50 per month. William's monthly payments could reasonably well be considered as having these logical and definite destinations:

| | |
|---|---|
| For board—on same basis as sister Cecil | $25.00 |
| For upkeep and medical bills of mother | $25.00 |
| Total | $50.00 |

It must be remembered that "total dependency" is not determined by what proportion of decedent's total earnings was contributed to the support of the claimant, but rather it is determined by the extent to which claimant looked to the decedent for support. In other words, if a humbly living claimant had been getting his entire living expenses, say $50 per month, from a deceased employee, who had been earning $500 per month, such a claimant would be considered a total dependent, even though the necessities of his dependency had actually required only 10% of the employee's wages. See Aden Min. Co. v. Kentucky Workmen's Comp. Bd., 267 Ky. 529, 102 S. W. 2d 1026.

Furthermore, this court has held that the widowed mother of an unmarried employee, who made contribu-

tions to the mother's support, was rightfully and legally considered a total dependent of her son, even though she herself had been earning some money by working occasionally on her own accord. See Blue Diamond Coal Co. v. Frazier et al., 229 Ky. 450, 17 S. W. 2d 406. In like tenor, see Fordson Coal Co. v. Burke, 219 Ky. 770, 294 S. W. 497; Tway Coal Co. v. Fitts, 222 Ky. 644, 1 S. W. 2d 1082; 28 R. C. L. 771.

And so applying to the instant case these established principles governing the law of dependency in the realm of workmen's compensation, it must now appear that the compensation board had, in this case, competent and probative evidence upon which to base its finding of fact to the effect that appellee, Mrs. Paxton, was a total dependent of her son, William Paxton, the deceased employee of the appellant corporation.

The award of the full death benefit compensation provided by law correctly and necessarily followed the finding of fact which was made by the compensation board on the question of dependency in this case.

Wherefore, having found no error in the trial court's judgment, the same is now hereby affirmed.