**ARNOLD & WHEELER DISTRIBUTING COMPANY, Appellant,**

v.

**Nannie F. MEADOWS et al., Appellees.**

Court of Appeals of Kentucky.

Jan. 31, 1964.

Rehearing Denied May 8, 1964.

C. W. Swinford, Stoll, Keenon & Park, Lexington, for appellant.

Russell Porter, Maysville, Dailey & Fowler, Frankfort, for appellees.

WADDILL, Commissioner.

The appeal is from a judgment upholding a decision of the Workmen's Compensation Board awarding compensation to Mrs. Nannie F. Meadows as the dependent of her unmarried son, Robert Meadows, who was found dead in the truck he operated as an employee of the appellant company. The Board found that his accidental death occurred while he was in the course of his employment and that his mother was totally dependent upon him. Appellant contends that the evidence was insufficient to support either of these findings.

The appellant operates a beer distributing agency in an area which includes the city of Frankfort. It maintains a warehouse near Frankfort which consists of an office and space for a truck and for the storage of beer.

Robert Meadows was employed by the appellant on November 3, 1961, as a driver-salesman. His duties required him to be at work between seven and eight o'clock in the morning, to load the appellant's truck with cases of beer, to solicit orders, to make deliveries and to store the truck in the warehouse during the night. He was also required to prepare a daily sales report and to deposit his collections in a night depository.

Meadows was found dead in the truck he had been employed to drive at about 10:30 A.M. on the 22nd day of November, 1961. The truck was parked in the warehouse and it was partially loaded with cases of beer. Meadows' head was lying near the right front door of the cab; his legs were extended with his feet located under the steering wheel. The motor of the truck was hot, the ignition key was in an "on" position, the hand choke was pulled out about a half-inch, the fan of the heater was running and the gas tank gauge registered empty.

A jacket found in the truck was folded in such a manner as to indicate it had been used as a pillow. The truck was equipped with a twenty-gallon gasoline tank, and it was established that Meadows had purchased eleven gallons of gasoline the day before his death.

Curtis Milton, who operates a service station located near the warehouse, testi-

fied that on November 21, 1961, the appellant's truck was parked in front of the warehouse at about 8:00 o'clock that evening.

A chemist found that Meadows' blood was saturated with carbon monoxide poisoning and that Meadows' death resulted from such poison. There was no evidence of any other cause of his death. The coroner's report listed the time of death as four o'clock in the morning. The coroner testified that his report reflected his best judgment, but that the death could have occurred from one to twelve hours before he examined the body at noon on the day the body was discovered.

Appellant insists that the only reasonable inference deducible from the evidence is that Meadows had spent the night in the warehouse and had gone to sleep in the cab of the truck after he had started the motor and turned on the heater. Therefore it is urged that Meadows, at the time of his death, was engaged in his own business rather than that of his employer.

■ The appellee had the burden of establishing that Meadows' death was the result of an accident arising out of and in the course of his employment, but the appellee was not required to produce direct evidence in proving her case. It is sufficient if evidence will reasonably sustain an inference or raise a presumption that the accidental death arose out of and in the course of the employment. Codell Const. Co. v. Neal et al., 258 Ky. 603, 80 S.W. 2d 530; Raymond Contracting Company v. Little et al., 255 Ky. 461, 74 S.W.2d 926.

The evidence establishing that Meadows was found dead in the cab of appellant's truck at his place of employment during his working hours and that his death probably resulted from a risk incident to his employment would ordinarily be sufficient to support a finding of the Board that the death was accidental and that it arose out of and in the course of his employment. Codell Const. Co. v. Neal, 258 Ky. 603, 80 S.W.2d 530. It is contended however, that, since the coroner had expressed the opinion that Meadows had died at approximately four o'clock in the morning and had officially reported the death as having occurred at that hour, there was no evidence upon which the Board could reasonably predicate a finding that Meadows' death occurred during his working hours.

■ Although the testimony of the coroner has probative value, it is subject to being weighed by the Board. In determining its probative worth the Board could consider the fact the coroner had no special training which would qualify him to determine, with any degree of accuracy, the time of Meadows' death. Furthermore, the coroner's testimony, when considered in its entirety, casts much doubt as to the correctness of his opinion that Meadows' death occurred at four o'clock. Under this view of the case the issue as to when Meadows' death occurred becomes one of fact to be determined by the Board. See Louisville Gas and Electric Co. v. Sanders, Ky., 249 S.W.2d 747, 749; Consolidation Coal Co. v. Marcum's Admr., 289 Ky. 220, 158 S.W.2d 150.

We conclude that the evidence was sufficient to authorize the inference that Meadows' death resulted from an accident arising out of and in the course of his employment with the appellant.

Appellant further contends that the evidence does not justify the finding of the Board that Mrs. Meadows was totally dependent upon the decedent, Robert Meadows.

Mrs. Meadows has been a widow for seven years. She does not draw social security and has no source of income. She and the deceased, who was not married, lived together in a rented house in Maysville. She testified that the deceased was her sole support; that he paid the rent and bought the groceries. Her two older

sons were married; one has five children and the other, six children. They did not contribute to her support. Her only other income was from occasional babysitting. The deceased's income tax returns list his mother as an exempt dependent who lived with him and to whom he furnished total support.

■ This testimony shows that the decedent had assumed the full responsibility for the support of his mother. Therefore, we are unwilling to say the evidence does not support the finding of total dependency. City of Harlan v. Ford, Ky., 252 S.W.2d 684; Ford, Bacon and Davis v. Paxton, 304 Ky. 292, 200 S.W.2d 738.

The judgment is affirmed.

MONTGOMERY and STEWART, JJ., dissenting.