**E. I. DuPONT de NEMOURS & COMPANY,
Appellant,**

**v.**

**Barbara F. CONNICK et al., Appellees.**

Court of Appeals of Kentucky.

March 11, 1966.

· Edgar A. Zingman, J. David Grissom, Wyatt, Grafton & Sloss, Louisville, for appellant.

Edwin A. Schroering, Louisville, for appellees.

MILLIKEN, Judge.

The appellee, Barbara F. Connick, is the widow of Harvey F. Connick, who fell to his death from the roof of a five-story A-Poly Building of his employer, the E. I. DuPont de Nemours Company, in Louisville on September 27, 1963. The trial court affirmed an award of the Workmen's Compensation Board for his death, and DuPont has appealed because it contends that the death was the result of suicide and that the evidence of suicide is so great that the Board's finding of facts really is a "finding of law" and hence appealable.

Connick had been employed for twenty-three years by DuPont as an engineer, had recently undergone electric shock and medical treatment for depression and alcoholism, had received most sympathetic consideration

from his employer during the periods of his treatment, and had returned to work about two weeks before his death. He had been in danger of losing his job unless he accepted treatment. The evidence shows that his condition had been so bad that one physician feared at various times that he might take his life and also the life of his wife. There were episodes which indicated that Connick had maimed himself intentionally at various times. He had been seen on the roof the day before and, according to the witness, Connick had acted strangely.

On the other hand, there was testimony that Connick had made arrangements about a week before his death to visit the roof to see the dismantling of a stripping machine which had a possible relation to the latex-yield research problem on which he was working. On his visit to the roof on the day of his fatal fall he was cheerful and interested and appeared fully capable of handling his work. He did, however, complain that the medicine he was taking made him dizzy, and he had written a poignant letter to his son several days before the fall that the drugs he was taking made him dizzy. The assertion that his medication caused any dizziness was refuted.

In its opinion the Board summarized the voluminous testimony:

"There were two means or ways of gaining access to the roof of this building. The building is L shaped and there was a stairway immediately to the east of the scene of the operation of the stripper, and then at the northeast corner there was a stairwell which could be used as a means of getting on or off the building. Instead of using the stairway the decedent went in the direction of the stairwell which was on the northeast corner of the building. The decedent was last seen at a point approximately 75 feet from the east end of the building. He was next seen by another witness falling through the air from a point at the southeast corner

of the building, this point being on the corner of the building opposite from the stairwell. There is no explanation, other than from speculation and guess, as to why the decedent was at the southwest corner of the building when his means of getting off the building was at the northeast corner.

"The defendant has established in this record that the decedent was a chronic alcoholic, a paranoid, had undergone much psychiatric treatment and had long and serious domestic difficulties with his wife; that on one or two occasions he had suffered accidents under suspicious circumstances, with indication that the injuries may have been self-inflicted. However, there is no evidence that on the day of his death or for several days prior thereto that the decedent had acted in any way but in a normal manner. There is in fact some evidence to the effect that while on the roof and during the stripping operation that he appeared to be enjoying himself and engaged in some mild horseplay and jokes with the other employees. Considering all of these factors and without attempting to discuss the great deal of evidence, and particularly considering the fact that there are no reasonable and logical explanations for the decedent to be at the southeast corner of the building—the point from which he fell—this Board is of the opinion and so finds that the defendant has failed to introduce sufficient positive evidence to overcome the presumption that the decedent did not intentionally jump from the top of the building and kill himself, but that in fact he did by accident fall therefrom to his death."

Since the Board also concluded on conflicting evidence that the stripping machine did not have "any direct connection with the functions of the decedent's particular job," the appellant contends that the Board's conclusion that the death of Connick arose out of his employment was erroneous, be-

cause his viewing of the dismantling of the machine was not a function or risk of his normal employment and hence his death did not arise out of his employment.

■ The burden of proof is on the claimant to establish that the death was caused by an accident and, of course, the presumption against suicide is a factor which supports the burden. The testimony of Connick's dizziness also is a factor to be considered regardless of whether it was refuted by testimony that the drugs he was prescribed ordinarily would not cause it. Whether they caused it is not the controlling issue. The issue is whether Connick was dizzy and there are his statements and his letter to his son which are evidence that he was. The fact that the place on the roof from which he fell was less protected than any other area on the roof is susceptible to the belief that that is why he chose it if you start from the premise that he committed suicide, but on the other hand it is susceptible to the belief that he became confused or dizzy and because of the slight barrier at that point toppled off the roof. Needless to say, the one foot eight-inch barrier at other points along the roof was not so high or so strong as to prevent anyone with a predetermination to commit suicide from doing it.

■ The factual conclusions of the Board are decisive if there is evidence to sustain them, and this Court may not properly overrule those findings even if it might feel otherwise on the evidence offered. Some of the evidence introduced here is consonant with accident and some of it consonant with suicide, and it was the Board's job to weigh the conflicting testimony and reach a conclusion. The finding that Connick's viewing of the dismantling of the stripping machine was not directly connected with his work does not impress us as precluding the conclusion that his death arose out of his employment. After all, he was a skilled employee working on a research project where initiative often pays great premiums to an employer and, in this instance, had made advance arrangements to witness the dismantling of the machine which processed latex.

■ We conclude, therefore, that the Board was justified in concluding that Connick's death arose out of his employment. See Codell Construction Company v. Neal, 258 Ky. 603, 80 S.W.2d 530, 532, and Arnold & Wheeler Distributing Company v. Meadows (1964), Ky., 377 S.W.2d 807.

The judgment is affirmed.