UGO DALPINE, Appellant, v. ANGELO LUME et al.,
Respondents.

St. Louis Court of Appeals. Argued and Submitted November 2,
1909. Opinion Filed November 16, 1909.

1. PARTNERSHIP: Compromise of Disputed Matters: Adjustment
and Settlement of Accounts: Setting Aside Compromise: Mis-
take. Where the accounts of a partnership were examined, the
property inventoried, liabilities deducted, and a balance struck
between the partners, and one of the partners was informed his
share was sixty dollars, and he thereupon offered to take
one hundred dollars and "he would walk out," which offer
was accepted by the other partners, such offer and acceptance
come more closely under the domain of a compromise of dis-
puted matters than a case of intended settlement and adjust-
ment of accounts between the parties; and such compromise
will not be set aside, although there may have been a mis-
take in striking the balance.

2. ACCORD AND SATISFACTION: Impeachment: Mistake. A
compromise will not be disturbed for any ordinary mistake
either of law or fact, in the absence of conduct otherwise in-
equitable.

3. EQUITY: Rescission: Necessity of Returning Consideration.
It is a rule, without exception, that one coming into a
court of equity must do equity, and before he can have a
transaction undone, he must return all that he received on ac-
count of it.

4. ———: ———: ———: Pleading: Prayer for General Relief
and Offer to do Equity. A general prayer for relief and of-
fer to do equity is sufficient, in order to invoke the powers of
equity to set aside an inequitable transaction, without speci-
fically pleading a tender of the money received thereunder, as
the court will require complainant to put the other party in
statu quo as the price of its decree.

Appeal from St. Louis City Circuit Court.—Hon.
Moses N. Sale, Judge.

AFFIRMED.

*Joseph Wheless* for appellant.

The undisputed evidence showing a settlement based upon an "honest mistake"—in the language of the trial judge—equity will relieve against it. "A plaintiff is granted relief when it is made to appear that he has innocently and inadvertently made a mistake which has caused him injury and resulted in profit to the opposite party." Electric Light Co. v. Surgical Ins. Co., 122 Mo. App. 636; Boon v. Miller, 16 Mo. 457; Wilson v. Boughton, 50 Mo. 17; Pomeroy v. Benton, 57 Mo. 542; Koontz v. Bank, 51 Mo. 278; Kraushaar v. Brant, 22 Mo. App. 166; Dodson v. Winner, 26 Mo. App. 335; Troll v. Sauerbrun, 114 Mo. App. 326; Fitzpatrick v. Stevens, 114 Mo. App. 497; Budd v. Eyermann, 10 Mo. App. 439; Lyle v. Shinnebarger, 17 Mo. App. 66; Christman v. Linderman, 202 Mo. 613; Norton v. Bohart, 105 Mo. 630.

*Buder & Buder* for respondents.

(1)   The court will not interfere where parties cannot be restored to their original position. Bispham's Principles of Equity (6 Ed.), Accident and Mistake, last par. of sec. 189, p. 272; Fink v. Bank, 178 Pa. St. 154; Neal v. Reynolds, 38 Kan. 432.   (2)   As a general rule, one who seeks to avoid the effect of an accord and satisfaction on the ground of fraud or mistake, or for any other reason, must restore or offer to restore to the other party whatever he has received by virtue of the transaction.   Alexander v. Railroad, 54 Mo. App. 66; Lomax v. Railroad, 119 Mo. App. 192; Och. v. Railroad, 130 Mo. 27.   (3)   Where parties without fraud or imposition have entered into a compromise for the express purpose of settling some doubtful, private, legal rights, there is no remedy for a mistake. Fetter on Equity, p. 121; Gormly v. Gormly, 130 Pa. St. 467; Hall v. Wheeler, 37 Minn. 522; Allen v. Gallo-

way, 30 Fed. 466. (4) The mistake, if any, was one of law and not of fact. 2 Pomeroy, Eq. Jur., sec. 849; Fetter on Equity, p. 121.

STATEMENT.—This is a suit by plaintiff against his former partners, the defendants, to set aside what is alleged to be a settlement arrived at between them on the dissolution of the partnership. The original petition charged fraud and mutual mistake, and avers that, relying upon the representations of the defendants and correctness of figures, plaintiff had received and accepted the sum of $70.39 in full settlement of his interest in the partnership business and withdrew from the firm, and that the defendants appropriated to themselves all the balance of the accrued profits of the partnership business, which plaintiff alleges were of the value of about $3611.30, net, in which he avers his share is $487.28, less $70.39 paid him; that on account of that fraud and mutual mistake, the settlement made should be vacated and an accounting of the business and profits of the partnership be had and the rights of the parties established, and that the court enter a decree dissolving the partnership and render a decree in favor of plaintiff for such sum as is found to be justly due him, and for general relief.

The answer was a general denial.

After the evidence was concluded, the court proceeded to render judgment, placing its finding in favor of defendants on the conclusion the court had arrived at, that there had been no fraud, attempted or practiced on the plaintiff. Whereupon plaintiff's counsel asked leave to amend by striking out the allegation of fraud and to stand on the allegations of error and mutual mistake. The court permitted this to be done and taking the case under advisement, dismissed the case, finding for the defendants. Whereupon plaintiff appealed, having filed a motion for new trial which was overruled, plaintiff duly saving exceptions.

It appears from the evidence in the case that plaintiff and defendants had formed a partnership to carry on the business of grocers, in St. Louis. After the partnership had existed for about a year, it appears to have been agreed that it should be dissolved and a division made of the firm assets. A paper to that effect was drawn up in Italian by one of the defendants, all the parties being of that nationality. This paper was introduced in evidence by plaintiff which, translated, is as follows:

"The division will be made on the basis of the inventory, whether from the inventory there should be a gain or loss. The gain or loss will be divided among the partners in equal parts."

It does not appear that this paper was signed by anybody, and the averment in the petition as amended is, that the partnership itself was a verbal one, no written articles appearing ever to have been drawn up. Acting under this understanding or agreement, the defendants and plaintiff, with a Mr. Nasse, who had been requested by the defendant Lume to act as a sort of appraiser in the matter, met and proceeded to take and make an inventory and appraisement of the goods, accounts, credits and debits, with a view of arriving at a basis for a dissolution. There was some evidence to the effect that plaintiff had offered to sell out his interest to one or both of the defendants, asking in the neighborhood of $300 for his interest. The inventory and appraisement were made by, or in the presence of, three men and the plaintiff; so far as we can gather from the record, the three partners being present, plaintiff acting for himself, and Mr. Nasse acting for the other two. Several days were consumed in making up this statement and reducing it to writing, and on its completion the partners and Mr. Nasse meeting, the latter stated to the plaintiff, according to the latter, that there was $70 coming to him. While Mr. Nasse was making the calculations from which he arrived at

this result, plaintiff was sitting by him.  According to Mr. Nasse's testimony, he went over the ledger with the plaintiff, added the outstanding accounts to the inventory and after they got through that, took the liabilities and deducted that from the former figure, then put down the three accounts in rotation and took off what each man had drawn.  Quoting Mr. Nasse, "The business showed a profit of so much, and Mr. Dalpine was sitting there, and I here (indicating) and the other two were standing on the other side, and after we had got the figures down we both added them, and I said, 'There is some sixty odd dollars that is coming to you, Mr. Dalpine,'—I think that was the amount.  I know it was not a hundred dollars, and we didn't examine the figures again.  We just had them on yellow sheets of paper, and after we had this balance Mr. Dalpine said, 'Give me one hundred dollars and I will walk out;' and I told Mr. Lume that that would be the best way to settle it, and he said, 'You pay him one hundred dollars,' and I told him I would do so, and they then wrote up the dissolution of partnership, and Mr. Dalpine then wrote out a receipt.  This receipt reads: 'Received of Mr. Lume one hundred dollars in full of account in law and equity.' "  This witness further testified that as Mr. Dalpine was writing the receipt, he asked witness how to spell the word "equity," and after he was told, he asked witness what it meant, and witness explained it to him.  Testifying as to what took place at the time when they were going over the figures, plaintiff said that Mr. Nasse told him that there was just seventy dollars coming to him, whereupon he said: "If I have seventy dollars coming, I ask one hundred dollars to go out of business, because we had another stock of goods to be calculated at half the amount of costs not included in that inventory.  I just trusted on what Mr. Nasse said.  They gave me a check made by Mr. Nasse.  I go down to his business place after the inventory and he gave me a check for

one hundred dollars." Plaintiff further testified that the day after that he talked with a friend, who was an expert accountant, and he told him there must be some mistake or misrepresentation about the matter; that he went to see Mr. Nasse and told him that there must be a mistake about the inventory he had made the day before. Mr. Nasse said: "Well, I don't think so. What you say is a mistake is only money that must be paid on the expenses of the firm." Plaintiff afterwards went back to Mr. Nasse, accompanied by some one who spoke better English than he did, and had him explain the matter to Mr. Nasse, and Mr. Nasse said that if it was the way he said, he would talk to defendants and have the matter settled. No other settlement, however, was made between the parties.

The defendant Lume, giving his version of the transaction, states that plaintiff, when the matter of dissolution was talked of, said he would rather take three hundred dollars for his share and step out, whereupon Lume told him to collect all the money he could and when he came back they would see how the firm stood. Plaintiff went out and collected some $268, out of which he retained some $18 for expenses and put the balance, $250, in his pocket. After this the inventory and appraisement was entered upon. Mr. Lume's version of the transaction is that after Mr. Nasse had figured with Mr. Dalpine, Mr. Nasse and Mr. Dalpine having done all the figuring in the matter and neither Devoti nor himself (Lume) having anything to do with the figures, and after Nasse and Dalpine had gone over the papers, and Nasse had told Dalpine that his share was about sixty or seventy dollars, "Mr. Dalpine jumped off the chair and said, 'If you give me one hundred dollars, I will walk out,' and Mr. Nasse said, 'What do you think about it?' And I said, 'I would like to give you the one hundred dollars, Mr. Dalpine, but I haven't got it in my pocket,' and Mr. Nasse said, 'I will loan you one hundred dollars.' And afterwards Mr. Dalpine

writes some paper receipt, and a paper dissolving the partnership. The receipt said Mr. Dalpine got one hundred dollars in full payment 'in law and equity.' I remember Mr. Dalpine asked Mr. Nasse how to spell "equity.'" On cross-examination this defendant testified that the object of taking the inventory was for the purpose of showing the condition so that Dalpine could either buy them out or they could buy him out. "Mr. Dalpine asked for three hundred dollars and I wanted to know how the firm's affairs were. The object was not to make a general dissolution, but to arrive at an amount at which one was to buy the other out." Asked if his idea was that they were not to dissolve the partnership and make a distribution of the profits and losses, but merely to determine the condition of the business so that he would have a basis for buying or selling, witness said: "No, my intention was when the place paid all the debts to divide it. My intention was to dissolve the partnership and pay the debts first and then divide it afterwards."

REYNOLDS, P. J. (after stating the facts).— Probably with more particularity than necessary, we have set out the salient facts in the case as developed at the trial, not, however, giving figures of the basis of settlement, as in the view we take of the case that is not material. In our view of this case and of the testimony in it, the settlement arrived at between plaintiff and the defendant by which one hundred dollars were paid to plaintiff and for which he signed the receipt heretofore copied, comes more closely under the domain of a compromise of disputed matters than a case of intended settlement and adjustment of accounts between the parties with the nicety usually requisite in arriving at a basis for a settlement on dissolution of a firm. Referring it to the class of compromises, we find the rule in equity to be that such transactions, "will not be disturbed for any ordinary mistake, either

of law or of fact, in the absence of conduct otherwise inequitable, since their very object is to settle all such possible errors without a judicial controversy." [2 Pomeroy's Eq. Jur. (3 Ed.), sec. 850.] The author further calls attention to the fact that there are *dicta*, "to the effect that a party will be relieved from a compromise in which he has surrendered property or other rights unquestionably his own, through a misconception of a clear legal rule, or an erroneous supposition that a legal duty rested upon him, whereas plainly no such duty existed; but the decisions show that these *dicta* must be confined to circumstances which render the compromise a virtual surprise, or to cases in which it was induced by positive inequitable conduct of the other parties. Voluntary settlements are so favored that if a doubt or dispute exists between parties with respect to their rights and all have the same knowledge, or means of obtaining knowledge, concerning the circumstances involving these rights, and there is no fraud, misrepresentation, concealment, or other misleading incident, a compromise into which they thus voluntarily enter must stand and be enforced, although the final issue may be different from that which was anticipated, and although the disposition made by the parties in their agreement may not be that which the court would have decreed had the controversy been brought before it for decision."

It is pretty plain that according to the statement drawn up by Dalpine and Nasse, and according to the way the interests of the respective parties were then cast up, there was only about sixty or seventy dollars coming to this plaintiff. That may or may not have been the correct amount; it may have been the result of applying a wrong rule of accounting, adopted by Mr. Nasse, but when plaintiff, with the facts before him, ended the matter by saying that he would retire if he were paid one hundred dollars, it is pretty clear that he was not relying upon the agreement of dissolution

or the correctness of Mr. Nasse's figures, but was making an offer that can bear no interpretation but an offer of compromise. It is true that in his testimony, plaintiff said something about the extra thirty dollars covering some stock not taken into account. That can hardly be, however, for the testimony of Mr. Nasse and of the plaintiff himself is that the inventory and appraisement was complete and covered everything, and, indeed, the only contention now made is, not that there was something excluded from the inventory and the appraisement, but that a mistake has been made in the manner of distributing this surplus, a misapplication of proper accounting or bookkeeper's rules, legal rules, more accurately, in the distribution of this surplus. To end the matter between them, however, plaintiff asked and was paid one hundred dollars, and he himself drew up a receipt, with full understanding of the terms, acknowledging full payment of all claims at law or in equity, even being careful to have the term "equity" explained to him. It is a serious question in this case as to whether the mistake under these facts is one of law or of fact. The decisions on this point turn upon such nice distinctions that while that point is suggested by counsel for defendants, we do not think it necessary to enter into it. Counsel make the further point, that there was no offer upon the part of the plaintiff, either in his petition or at the trial, to return the one hundred dollars, which beyond dispute were paid to him. It is a rule, without exception, that one coming into a court of equity, must do equity, and before he can have the transaction undone which he desires to repudiate, he must be required to return all that he has received on account of it. But this need not be by pleading an offer or tender of the return of that which was received. The rule is that where the party inserts a general prayer for relief and proffers to do equity on his part, these general allegations are sufficient, and the court will require him to refund or put the other

party in *statu quo* as the price of the decree it gives. This has been distinctly held in a number of Missouri cases, which were equitable actions, when treating of the pleadings in them. [The case of Whalen v. Reilly, 61 Mo. 565.] The opinion by Judge SHERWOOD is a leading authority in point. The case of Paquin v. Milliken, 163 Mo. 79, l. c. 104-6, follows the rule announced in the Whalen case. This court in the case of Haydon v. Frisco Railroad, 117 Mo. App. 76, l. c. 106 and 107, reviews these authorities and so held. The Haydon case was affirmed on this point by the Supreme Court (222 Mo. 126, 121 S. W. 15). The rule which requires a party to do equity before he is entitled to equity, as said by Judge SHERWOOD in Whalen v. Reilly, supra, "finds its application *not in questions of pleading nor by what the plaintiff offers to do therein,* but in the form and frame of the orders and decrees, both interlocutory and final, whereby equitable terms are imposed as a condition precedent to equitable relief granted."

Upon consideration of all the facts in the case, we have concluded that the action of the ciruit court in finding for the defendants is for the right parties and its judgment is affirmed. All oncur.

