## Wells Elkhorn Coal Company v. Vanhoose, et al.

(Decided February 11, 1927.)

(Rehearing Denied, with Modification, June 24, 1927.)

### Appeal from Floyd Circuit Court.

1. Master and Servant.—Where, under uncontradicted facts, Compensation Board enters award not authorized by law, award is not finding of fact, but erroneous application of law reviewable by courts as question of law.

2. Master and Servant.—Where fact found by Compensation Board is established by substantial evidence, finding is conclusive upon court, in absence of misapplication of law.

3. Constitutional Law.—Workmen's Compensation Act (Ky. Stats., section 4935), providing award or order of Compensation Board shall be conclusive on appeal as to all questions of fact, held not unconstitutional as conferring judicial powers, in view of situation of board as body to which controversies are submitted by agreement.

4. Master and Servant.—Where employer and employee have by contract between themselves submitted controversy to Compensation Board under Workmen's Compensation Act (Ky. Stats., sections 4880-4987), and board has passed on facts, parties have waived right to question board's power and conclusiveness of its findings, under section 4935.

5. Master and Servant.—Award of compensation to slate picker employed by coal mining company for total disability, under Workmen's Compensation Act (Ky. Stats., section 4897), held sustained by evidence, which indicated injury to employee's arm was such as to render him permanently disabled, board not being required to limit award to partial permanent disability under section 4899.

ROBT. T. CALDWELL and JAMES & HOBSON for appellant.

C. B. WHEELER and FRANK E. DAUGHERTY, Attorney General, for Workmen's Compensation Board.

GARDNER K. BYERS, Assistant Attorney General, for appellee.

Opinion of the Court by Turner, Commissioner—
Affirming.

Appellant is a coal mining corporation, and operates
a mine in Floyd county under the provisions of the
Workmen's Compensation Act. Appellee was in 1923
an employee of appellant and had accepted the provi-
sions of that act. While engaged in the operation of a
small engine at appellant's tipple and in "picking slate"
out of the coal as it passed over a moving screen, he was
injured on the 29th of October, 1923.

In December or January thereafter, the parties filed
before the compensation board their written agreement
that the employee was permanently disabled, either
totally or partially, and the employer agreed for the time
being to pay compensation at the rate of $15 per week,
beginning November 5, 1923.

Thereafter a controversy having arisen between the
parties as to the amount and duration of the compensa-
tion payable, the employee filed his application before
the board for an adjustment of the claim, stating the
nature of his injuries and asking the board to award
him such compensation as he was entitled to.

In April, 1924, a hearing was had before a member
of the board and evidence introduced, and in November,
1924, there was a finding that appellee was totally dis-
abled as a result of his injuries, and awarded compen-
sation at the rate of $15 a week, beginning November 15,
1923, and continuing for a period not exceeding eight
years and in amount not to exceed $6,000.

Thereafter, upon motion of the company, the ques-
tion was opened up and there was a review by the full
board of the original finding, and upon such second hear-
ing, held about eighteen months after the injury, the
board again granted an award of $15 per week as had
been previously done, and found as a fact that the em-
ployee was permanently and totally disabled as a result
of his injuries.

The company filed a petition in the circuit court for
a review of this last award, and that court having
entered a judgment approving the award and directing
its execution, this appeal is prosecuted from that judg-
ment.

The award was made under the provisions of section
4897 of the act providing for compensation for injuries
causing "total disability for work," and this appeal is

prosecuted chiefly upon the ground that there is really no conflict in the evidence as to the extent of appellee's injuries, and that the board under the evidence should have awarded compensation under the provisions of section 4899, providing for compensation for injuries resulting in partial permanent disability. It is conceded that the injuries authorized an award for permanent partial disability under the provisions of the last named section, but it is insisted that because there is no substantial evidence of permanent total disability that the action of the board is reviewable by the courts because under the uncontradicted evidence it applied the wrong section of the statute.

It is true that where, under the admitted or uncontradicted facts, the board enters an award not authorized by the law, the award is not a finding of fact upon an issue, but is an erroneous application of the law to the facts and is therefore reviewable by the courts as a question of law and not of fact. Jellico Coal Mining Company v. Chatfield, 200 Ky. 842.

But where there is substantial evidence before the board tending to establish the fact which it finds to be a fact, and there is no misapplication of the law to the facts then the finding of fact by the board is conclusive upon the courts. Bates & Rogers' Construction Co. v. Allen, 183 Ky. 815; Andrews Steel Co. v. McDermott, 192 Ky. 679; Nelson v. Ky. River Stone & Sand Co., 182 Ky. 317.

But it is said for appellant that the provision of section 4935 Ky. Stats., part of the Compensation Act, that an award or order of the board upon review shall be conclusive and binding on appeal as to all questions of fact, is unconstitutional, because it confers upon the board judicial powers as expressly denied by the Constitution. In reliance upon this view counsel cites Greene v. Caldwell, 170 Ky. 571; Hoblitzel v. Jenkins, 204 Ky. 122; Pratt v. Breckinridge, 112 Ky. 1; Williams v. Wedding, 165, 361; L. & N. v. Greenbrier Distilling Co., 170 Ky. 775. The first-named case is the one in which this court upheld the constitutionality of the Compensation Act of 1916 as a whole, the second named is an opinion of this court upholding the constitutionality of an act creating a real estate commission, but declaring unconstitutional one provision of the act. The third was an action involving the validity of provisions authorizing an election board to try contested election cases. The fourth was an opin-

ion involving the validity of certain provisions of a drainage act, and the fifth involving the validity of certain legislative acts conferring power upon the state railroad commission.

The distinction between the questions discussed in the four last named cases, wherein certain powers were by statute conferred upon administrative bodies, and that conferred upon the compensation board here involved becomes manifest when the opinions of this court determining the validity and constitutionality or unconstitutionality of the 1914 and 1916 Compensation Acts are considered.

In none of them is the validity of a statute conferring power upon an administrative body considered with relation to a voluntary contract entered into between individuals as affecting the power of such administrative body, except that in the first named case.

In Ky. State Journal Co. v. Workmen's Compensation Board, 161 Ky. 562, the validity of the 1914 Compensation Act was involved, and one of the vital controlling considerations impelling the court to declare that act invalid was that it was compulsory and coercive upon the employee. Then in the extended opinion (162 Ky. 378) this idea was emphasized when it was held that an employee coming within the provisions of the act may voluntarily agree to accept its provisions and thereby limit the amount of his recocery by contract in case of personal injury. Also that he might voluntarily accept the provisions of the act and fix by contract the amount recoverable in the event of his death by accident; and that extended opinion further pointed out how and in what respects a valid act might be passed.

Then in 1916 the General Assembly again passed a Compensation Act the validity of which was involved in the case of Greene v. Caldwell, 170 Ky. 571. In upholding the validity of that act the court in the opinion referred some two or three times to the fact that it was an elective and not a compulsory or coercive thing which the employer and employee were authorized by its provisions to enter into; that, on the contrary, it authorized them to voluntarily enter into a contractual relation fixing their business relationship, and the result of any injury that might come from it, and that in such a contract it was competent for the employee, as between him and his employer, to waive by contract certain constitutional rights that he might otherwise have, as indeed the same thing

had been practically held in the extended opinion referred to in 162 Ky.

The distinction between the creation by law of an administrative body given coercive powers which may restrict or interfere with the constitutional rights of a citizen, and the creation of an administrative body before which an employer and an employee may go and submit by agreement their controversy, and ask to have it adjusted, is apparent. The compensation board, as held in Greene v. Caldwell, is merely a fact finding body to aid the courts and to which either party may thereafter appeal; and it is analogous, as pointed out in that opinion, to a board of arbitration to which the parties by contract have submitted the facts touching their controversy, and upon whose finding of fact they have agreed to be bound without reference to their rights under the law.

The Compensation Act of 1916 in terms declares that the finding of fact by the board shall be conclusive, and when both employer and employee have by solemn contract between them submitted their controversy to the board, and that board has passed upon the facts, they have each waived by contract any right they might theretofore have had to question its power.

So that our problem here is to see whether there is any substantial evidence that appellee's injuries resulted in permanent total disability, or whether all of that evidence shows that they only resulted in permanent partial disability.

The appellee was 59 years of age at the time of the injury and had been at work as a loader in the mines for a number of years until some two or three years before his injury, since which time he had been working at and about the screen. On the first hearing appellee testified that his left shoulder had been thrown out of place, and that the muscles were broken and he could not use it, and that his right arm had been broken below the elbow; that his elbow had been injured and he could not straighten his arm, and could not straighten it at that time; that his hand was mashed and he could not grip with it; that he could not use his arm from the elbow, and could not raise his shoulder by himself; that he could use his left shoulder and arm very little, and could not get his coat on and off by himself, and in effect that he was unable to do anything that required the lifting of his arm. There was other evidence on both hearings to the effect that he could not put on and take off his coat, and that up to the

last hearing he had never been able to do any physical labor more than walk around, gather a few nuts from the ground, turn on the hydrant a few steps from his door and carry a bucket of water to the house. On the first hearing four doctors testified to the effect that his left shoulder was dislocated, and his right arm fractured near the middle, together with some other cuts and bruises, but differed some as to what might be the ultimate outcome of his injuries, so far as his future ability to do physical labor was concerned.

On the last hearing, however, only three doctors' testified, one introduced by the company and two by the claimant. The doctor introduced by the company testified on the 29th of April, 1925, and said he had not examined the claimant since the June or July theretofore, but based his evidence upon such examination. He said, however, that he had examined him after the acute condition following the injury had subsided, and that there was some impairment to the motion of the shoulder caused by sublaxation that limited the use of the arm in extending it upward; but that there was litlte trouble in lifting the arm backward and forward; that the impairment to the left arm was because of his inability to lift his arm above his head, but that he might do any kind of work which did not require him to lift his arm over his head, and that his right arm was then practically normal. The witness expressed the opinion that claimant could do the work known as "slate picking," or general farm work. On cross-examination he admitted that claimant could not raise his left arm up to the level of his shoulder at the time he examined him, and that if he could not extend his hand more than six inches from his waist line he could not do the "slate picking."

Dr. Castle, introduced for the claimant, said he had given his deposition upon the former hearing, but that he had recently re-examined claimant and his condition was not any better than it was then; that he had ankylosis of the left shoulder, due to a dislocation, and probably a fracture too; that he could not raise his left arm up to any distance at all, but could raise his hand a little; that he had fairly good use of his right arm, but it was impaired some; that in his opinion his disability was permanent and he would probably never be able to do any manual labor. That he and Dr. Wells examined the claimant together, stripped him and took measurements; that his opinion of the impairment of the left

arm was based upon the measurements and motions which he and the other doctor caused the arm to make, and that claimant could not move his arm more than just a short ways out from his belt; that in the examination the two doctors moved the arm themselves, and did not rely wholly upon the claimant, that they took hold of his shoulder and arm and tried to raise it but could not; that he could not elevate his left hand above his waist, but could only use it below his waist or belt, that the muscles of that arm are atrophied and wasted.

Dr. J. P. Wells also testified for the claimant and stated:

> "The marked ankalosis of the left shoulder joint rendered the left arm useless; he has a slight impairment of the right arm also. There has been no improvement since I examined him before, and I believe the disability is permanent and total."

One or both of the last-named doctors based their opinion that claimant's condition was permanent and total, partially upon his advanced age at the time of the injury.

It would seem to require no acute sense of analysis to show that a man in his sixtieth year, who eighteen months after an injury cannot lift his left arm more than a few inches from his waist line and whose right arm is still slightly impaired from the same injury, is totally disabled for work as a coal miner or as a slate picker over a moving screen, which from the nature of things requires him to lean over that screen (42 in. wide) and stretch out his arms in order to reach and separate the slate from coal. And that these facts testified to by two doctors, when fortified by their expert opinion that he was permanently disabled from physical labor, constitutes substantial evidence authorizing the compensation board to award him compensation under section 4897, cannot be doubted.

In Jellico Mining Company v. Chatfield, 200 Ky. 842, this court, in considering a somewhat similar case, said:

> "Accepting the findings in this regard as final we can not say the board was in error in holding such facts to constitute total disability. It must be borne in mind that his physical condition is such as to prove a serious handicap in procuring other suitable employment, and, as suggested, he is too far advanced in life now to obtain an education or

to undergo training for a new occupation. Appellant has deprived him of the ability to earn a livelihood in his only occupation and it does not lie in its mouth to demand that he should assume all the responsibility of procuring new employment regardless of the success or failure of that quest."

In the very recent case of Consolidation Coal Co. v. Crislip, 217 Ky. 371, this court held the words "total disability for work" applied to one who is disqualified from performing the usual tasks of a workman in such a way as to enable him to procure and retain employment.

Obviously the evidence of appellee and of these two doctors furnishes substantial evidence of claimant's total and permanent incapacity for work, and authorizes the board to make an award based thereon.

Judgment affirmed.