## James et al. v. Elkhorn Piney Coal Mining Co.

April 18, 1939.

John W. Caudill, Judge.

HAWK & LEWIS for appellant.
COMBS & COMBS for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The appellant, William James, was employed by the Elkhorn Piney Coal Mining Company as a coal loader. On October 17, 1935, he was injured in the course of his employment by a fall of slate. He was taken to a hospital in Huntington, West Virginia, for treatment, and remained there until November 15, 1935, when he was discharged as cured and able to return to work. The Company paid him compensation at the rate of $13.16 a week for 4 weeks, and then tendered him a check for $5.65, in full settlement of the compensation due him, which he declined to accept. On December 19, 1935, he filed with the Workmen's Compensation Board an application for compensation in which he claimed that he was totally disabled. A referee of the board found that he was totally and permanently disabled, and awarded him compensation in the sum of $15 per week for a period of 400 weeks, or a total of $6,000. An application for a review by the full board was filed, and on July 6, 1937, the Workmen's Compensation Board sustained the award of the referee and adopted his findings, opinion, and award as the findings, opinion, and award of the full board. The employer then filed in the Floyd circuit court a petition for review of the board's award, and a judgment was rendered directing the Workmen's Compensation Board to dismiss the application. William James has appealed, and it is urged in his behalf that there was some evidence tending to support the award of the board, and, since findings of the Workmen's Compensation Board on disputed questions of fact are conclusive, the circuit court erred in setting aside the award.

The proof shows that appellant, a negro, was 25

years of age at the time of the accident, and had been employed as a coal loader in mines in West Virginia and Kentucky for several years. He was a strong, able-bodied man in good health, and had worked regularly until the injury was received of which he now complains. He began working for appellee on July 16, 1935, and his weekly earnings were sufficient to justify the maximum award under the act. Concerning the accident, appellant testified that he was shoveling coal, and while in a stooping position a large rock, or piece of slate fell on him rendering him unconscious. The accident happened about 1 or 1:30 p. m. He was taken to a hospital in Huntington, West Virginia, and was still unconscious when he arrived there between 6 and 7 o'clock p. m. Romey Williams, a coal loader, was working in the room with appellant when the accident happened. He testified that while appellant was shoveling coal a rock fell on him. The rock was about 6 feet long, 5 feet wide, and varied in thickness from 1 inch to 14 inches. Appellant was pinned beneath the rock in a doubled up position. Mullins was unable to extricate appellant, and he called six other miners to assist him in moving the rock. Appellant remained under the rock about 15 minutes, and was unconscious when he was taken from the mine. There were several cuts and abrasions on his head and back, and he was bleeding profusely. The appellant testified that after his discharge from the hospital the appellee offered him a position in its mine, but he declined the offer. The mine physician told him to see the superintendent, and, in explanation of his failure to do so, appellant said: "I never did go to see him, I know I wasn't able to do no kind of work."

When his deposition was taken in March, 1936, he claimed that he was still unable to work, and, in describing his condition, said:

"When I stoop over, I can feel that rock laying up on my back, and I can pick up something, and that rock lays on my back, I can pick up something like a bucket of water and feel that rock."

He was then asked these questions and made these answers:

"Q. Have you tried to work any since you were discharged from the hospital? A. Only a couple of days, I tried to work in the garden, but didn't have no success.

"Q. What do you call success, working in the garden? A. I mean that every time I stooped over, I could feel my back hurt, but the most important thing, my head went dizzy and spots come before my eyes."

He also complained of headaches and poor vision. He introduced no medical testimony to connect the subjective symptoms described by him with the injury. Two or three lay witnesses testified that he was a strong, able-bodied man before the accident, and one testified he had seen appellant several times after he was injured and he did not seem to be normal; that at times "he acted foolish."

Appellee took the depositions of four physicians. Dr. Francis A. Scott, an orthopedic surgeon of Huntington, West Virginia, testified that he first saw appellant about 6 p. m. on October 17, 1935, at St. Mary's Hospital in Huntington. He found a laceration on the left side of appellant's scalp, a laceration through the left eyebrow, a small wound on the right eyelid, scratches on his left shoulder, and bruises over the middle portion of his back and lower back. His spinal fluid was examined in order to ascertain whether or not he had suffered a severe skull injury, and X-ray pictures were made. An infection developed in the wound over the left eyebrow which delayed appellant's discharge from the hospital. Appellant was discharged from the hospital on November 16, 1935. He returned to the hospital on December 9, 1935, and was again examined by Dr. Scott who testified as follows concerning his condition at that time:

"At the time of the last examination the wounds were all healed. Patient complained of dizziness and numbness of the left frontal portion of his scalp. There was no tenderness over the forehead or about the orbit, or eye socket. There was no change in sensation over the scalp or forehead. Examination of the spine at that time failed to reveal any limitation of motion. There was no tenderness and no muscle spasm. The extremities were normal. Patient was complaining of being unable to see and as he had been examined by Dr. F. O. Marple, Huntington, West Virginia, immediately after injury in regards to his eyes he was again referred to Dr. Marple who reported disturbance of vision of the left eye which had been present since birth. At that time we felt that the

man was able to return to work and that there would be no permanent disability. He has slight weakness of the muscles that pull the left eye upward and outward but this would not cause any disability in regard to his returning to his previous occupation.''

Dr. F. O. Marple, an eye, ear, nose and throat specialist, testified as follows:

''I examined him in the St. Mary's Hospital, Huntington, West Virginia, on November 11, 1935, and left orders to send him to my office for examination. He came in on November 15, 1935, and the following is the result of my examination: He gave a history of having been injured by falling slate. There was a small cut on the upper eye lid on the left side and a deep cut through the eyebrow involving the orbit. This had been sutured and there followed some infection in the orbit. There was some difficulty in rotating the left eye upward and an inability to hold it in this position. This condition was evidently due to some mild or small adhesions involving the superior rectus muscle. The cornea was clear and no evidence of any injury other than this. His vision in the right eye was 20/20 minus. Vision in the left eye was 20/50. Homatropin drops were put in both eyes for further examination. It was found that this defective vision was due to a refractive error. The eye grounds and visual fields were normal. He had in the left eye astigmatism sufficient to reduce the vision as found. I saw him again December 9, 1935, and there was practically no change in the condition. He was still complaining, however, of his eyes. The scar over the orbit was still quite evident.''

Both Dr. Scott and Dr. Marple stated that appellant had no disability resulting from the accident except the inability to rotate his eye upward, and that this would entirely disappear. Dr. Charles C. Garr, an eminent orthopedic surgeon of Lexington, Kentucky, examined appellant on May 1, 1936. He testified as follows:

''I first met him this morning, that is May 1st, 1936. He was sent to me for an examination to determine any disability he might have following a mine accident on October 17th, 1935. He told me he was injured in a coal mine by falling slate on

that day and was struck over his right eye and in the back. He said he was treated in Huntington, West Virginia, by Dr. Francis Scott. He said he was unconscious for several hours after the injury. He says he has headaches and cannot see so well, complains of pain in the lower part of his back, has not worn a brace or cast, has attacks of dizziness, spots before his eyes. In examining him I found him to be a very strong looking, muscular negro man. An examination of his spine was entirely negative. There was a scar over his right eye well healed. An examination of his throat was negative, the ear membranes were normal, the fundus of the eye was negative, there was no involvement of any of the cranial nerves and the extra ocular muscles of the eye were normal. An X-ray picture was made of the skull, and no evidence of fracture could be found. From physical examination I could find no evidence of disability.''

Dr. E. C. Yates of Lexington, Kentucky, who examined appellant on May 1, 1936, testified that he found no disability resulting from the accident of October 17, 1935, but his testimony was not considered by the board since his name was not included in the list of witnesses in the notice to take depositions. All of the medical testimony is to the effect that there is no evidence of disability. The only testimony to the contrary are the statements of appellant that he has pains in his head, suffers from dizziness when in a stooping position, and that spots come before his eyes. The evidence shows that he suffered a serious injury, and that he was a strong, able-bodied man before the accident. While the medical testimony to the effect that he now has no disability resulting from the accident is strongly persuasive, yet we are not prepared to say there was no evidence to the contrary. Appellant's testimony concerning his condition was competent, and has some probative value.

In Harvey Coal Corporation v. Pappas, 230 Ky. 108, 18 S. W. (2d) 958, 959, 73 A. L. R. 473, it was said:

"When a man who has been in perfect physical health without any impairment of any of his organs, for many years, receives a severe injury, and immediately thereafter an impairment is discoverable, it is evidence that the injury produced the im-

pairment, and there was an abundance of evidence of nonexperts establishing these facts. When these facts established by nonexperts are supported by the testimony of a number of physicians, although the number may not be as great as the number who testified to the contrary, a court cannot say that there was no evidence to support the finding of fact by the board.''

In the present case, the appellant did not introduce any expert testimony to show that his condition, as described by him, might have been produced by the injuries received in the accident of October 17, 1935, but, on the other hand, appellee's expert witnesses did not state that such a condition could not have been produced by a severe head injury such as appellant admittedly received. The appellant's credibility as a witness was a question to be determined by the Workmen's Compensation Board, and if his testimony is true there was some competent evidence from which the board might reasonably infer that his condition resulted from the injuries received in the accident. Section 4935 of the Kentucky Statutes provides that: ''An award or order of the board * * * shall be conclusive and binding as to all questions of fact.'' In American Rolling Mill Company v. Pack, 278 Ky. 175, 128 S. W. (2d) 187, decided March 10, 1939, we held that this means ''evidence which is substantial, that is, affording a substantial basis of fact from which the fact in issue can be reasonably inferred.'' We think the evidence in the present case measures up to this rule to the extent that it tends to show appellant suffered some disability as a result of the accident, but it is wholly insufficient to sustain a finding that his disability is either total or permanent. There is no evidence as to its permanency, and the only evidence as to its extent is appellant's unsupported statement that he is unable to work. His refusal to return to work at the mine seems to have been based on fear rather than a feeling of inability to perform manual labor. His testimony concerning his efforts to work after he returned from the hospital is vague and unsatisfactory. In other words, the evidence on this point consists ''of mere vague and uncertain matter not having the fitness to induce conviction.'' American Rolling Mill Company v. Pack, supra. There was no evidence before the board authorizing its finding that appellant's disability is total and permanent. The judgment of the circuit court went too far, however, in remanding the

case with directions to dismiss appellant's application for compensation.

The judgment is reversed, with directions to remand the case to the Workmen's Compensation Board for further hearing. Both parties should be permitted to take additional proof if they so desire.