## Black Mountain Corporation v. McGill.

### Nov. 27, 1942.

J. B. Snyder for appellant.

George R. Pope for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Affirming.

The appellee, Roy McGill, filed a claim for compensation with the Workmen's Compensation Board, claiming he was injured on January 9, 1941, while working as a coal loader in appellant's mine. As a result of stipulations, the only questions before the Board were whether notice was given, whether the claimant sustained a disability as the result of injury and, if so, the extent of disability.

The referee found that notice was given and that claimant had sustained a total temporary disability which ended May 6, 1941, and, following this, 50% partial permanent disability to his body as a whole. Award was made accordingly, based on wages sufficient to justify maximum compensation.

On a Full Board review, granted on appellant's motion, the finding and award of the referee were set aside and the finding and award of the Full Board substituted therefor. This finding was that the claimant had suffered total disability to resume his occupation of coal loader or perform other hard manual labor, which disability might, or might not, be permanent. The award was that the claimant recover ''compensation at the rate of $15.00 per week for a period of his total disability to resume his duties as a coal loader or to perform other hard manual labor, the compensable period in no event to exceed

500 weeks, nor the maximum amount in no event to exceed $7500.00 with 6% interest on all past due installments subject to a credit for any sum that defendant has heretofore paid plaintiff as compensation for the injury complained of; PROVIDED HOWEVER, that defendant may be relieved of the payment of compensation to plaintiff for any number of weeks during the compensable period during which defendant has furnished or may hereafter furnish plaintiff employment suited to his physical condition at a wage equal to or in excess of $20.00 per week.''

Appeal was taken by appellant to the circuit court, which affirmed the award of the Board, and this appeal is from the judgment of the circuit court.

McGill testified that prior to the date of the claimed injury he was in perfect health and worked continuously and regularly; while loading a car with coal he slipped and fell forward into the car, the main force of the fall being received against his abdomen, and a sharp pain, like a knife, hit him in the stomach; he immediately became violently nauseated and had to be assisted from the mines; he stayed at home some days and then went to the company hospital, where he received treatment for several weeks. He stated that he sent his wife to notify appellant's foreman of his injury but received the report that the foreman would not talk to his wife. He stated that while in the hospital he notified this foreman of the injury but the foreman refused to talk to him. He returned to light work on March 6 and at the time the hearing started was earning $5 per day. He says he is unable to work as a coal loader or to perform any kind of hard manual labor.

Three physicians testified for the claimant and three for appellant. All physicians agreed that he was suffering from fallen stomach, which the physicians termed gastroptosis. All physicians for the claimant testified that his condition could have resulted from trauma and Dr. Caywood, testifying for appellant, was of the same opinion. No physician, however, had treated a case of gastroptosis resulting from trauma. To each of the three physicians testifying for claimant a hypothetical question was propounded, assuming the previous good health of the claimant and a severe blow to his abdomen on the date claimed by him, and in answer to this question each of the physicians gave it as his opinion that

the claimant's disability was directly attributable to the injury. Two of these physicians expressed the opinion that the claimant had sustained a 50% disability to his body as a whole while the other physician fixed the disability at 60%. All stated that in their opinion the disability was permanent, but the concensus of their opinion was that by proper treatment he would be relieved and might return to light work. Dr. Evans expressed the opinion that the claimant "could do some light work standing practically straight where he did no stooping."

Physicians testifying for appellant were of the opinion that the claimant's condition was not due to trauma, but to natural causes, and that by proper treatment his condition would be greatly improved.

The claimant received insurance benefits on an insurance policy covering a number of weeks of disability although the policy did not provide benefits for compensable accidents.

It is contended by appellant, first, that there was no evidence that notice was given. We think, however, that there was some evidence to support the finding of the Board that notice was given since the claimant testified that he notified appellant's foreman of his injury.

Appellant also contends that there was no evidence of substance before the Board that the fall claimed by McGill was the cause of his disability and they contend that in any event a finding of total disability was unjustified in view of the fact that two of the physicians testifying for appellant placed his disability at 50% and the other placed it at 60%. Much stress is laid by appellant on the fact that the claimant received the insurance benefits which he was not entitled to receive if he had sustained a compensable injury. However, this is but a circumstance to be considered along with all the other evidence, and it is our conclusion that the claimant's testimony taken in connection with that of the physicians testifying in his behalf constituted substantial evidence sufficient to support the finding of the Board. It will be observed that the Board did not make a specific finding that the claimant had sustained total permanent disability to the body as a whole. The finding was that he had suffered total disability to resume his former occupation as a coal loader or perform other hard manual labor and that this disability might, or might not,

be permanent. Further, the award was not for a specific number of weeks but only for the period of his total disability to resume his duties as coal loader or ·perform other hard manual labor, not to exceed the maximum number of weeks. We have many times pointed out that total disability does not mean absolute helplessness or entire physical disability but rather the loss of earning power as a workman, whether manifested by inability to perform work obtainable, or inability to secure work. Leckie Collieries Co. v. Branham, 275 Ky. 748, 122 S. W. 776, and cases therein cited. And we have further held that where a worker's future usefulness in occupational opportunities is impaired the question of compensation is for the Board. High v. Liberty Coal and Coke Co., 207 Ky. 197, 268 S. W. 1095. Since there was medical testimony that the claimant was incapacitated from hard manual labor, it is evident that he was incapacitated to perform his duties as a coal loader and the Board was justified in so finding.

Appellant complains bitterly that the action of the Board in setting aside the award of the referee and substituting the Board's award allowing total disability compensation was taken merely to punish appellant for making the motion for a Full Board review. We do not regard the action of the Board in this light and it seems to us that its action might be more favorable to appellant than it apprehends. In any event, this form of award was plainly justified by the decision in Consolidated Coal Co. v. Ditty, 286 Ky. 395, 150 S. W. (2d) 672, which was followed in the later case of Lawson v. Wisconsin Coal Corp. et al., 290 Ky. 375, 161 S. W. (2d) 600.

In the Ditty case we had the reverse of the situation now before us. There the injured employee, who had been furnished light employment, was complaining of the action of the Board in crediting the award by the number of weeks the company had paid or might pay him a weekly wage of $15 or more. The action of the Board was upheld. There, as here, the Board's finding was that the claimant was incapacitated from loading coal and doing hard manual labor.

The claimant in the present case had been furnished, and was doing, light work for which he was receiving $5 per day. The statement is made in the appellant's brief that immediately upon the rendition of the award

he ceased to work and it is insisted he will never work again as long as he is permitted to draw compensation. However, the question of his ability to work is not one to be determined by the employee but the final determination of this matter rests with the Board. Leckie Collieries Co. v. Branham, supra. If the claimant upon the rendition of the award ceased to perform the light work furnished him by appellant at a time when he was able to work, the Board will no doubt take care of this situation. In determining the correctness of the Board's action we must assume that the Board will fairly and impartially discharge its duties.

In any event, as pointed out in the Ditty case, once it is established that there is evidence to support the Board's finding, the question of compensation addresses itself to the Board and not to the courts. It seems to us that the Board arrived at a fair and equitable solution of the controversy.

Judgment affirmed.