Paul COMBS, Commissioner of Industrial Relations, and Supervisor of the Subsequent Injury Fund for and on behalf of the Subsequent Injury Fund, Appellant,

v.

Thomas GAFFNEY et al., Appellees.

Court of Appeals of Kentucky.

June 24, 1955.

Rehearing Denied Nov. 4, 1955.

J. D. Buckman, Jr., Atty. Gen., Hal Williams, Armand Angelucci, Asst. Attys. Gen., for appellant.

C. W. Swinford, Lexington, for Trojan Const. Co.

Smith, Reed & Leary, Frankfort, for Thomas Gaffney.

WADDILL, Commissioner.

This case rises under the Workmen's Compensation Act, specifically KRS 342.120, Subsequent Injury Fund, which provides:

"(1) If any employe who is permanently partially disabled, whether from a compensable injury or otherwise, receives a subsequent compensable injury by accident resulting in additional permanent disability so that the degree of disability caused by the combined disabilities is greater than that which would have resulted from the subsequent injury alone, and such employe is entitled to receive compensation on the basis of the combined disabilities, the employer shall be liable only for the degree of disability which would have resulted from the latter injury had there been no pre-existing disability. After the compensation liability of the employer, or his insurance carrier, if any, has been fully discharged, the remaining compensation to which such resulting condition would entitle the employe, less all compensation which the provisions of this chapter would have afforded on account of the prior disability had it been compensated for thereunder, shall be paid out of the Subsequent Injury Fund pro-

vided for in subsection (1) of KRS 342.122.

"(2) The term 'permanent partial disability' under the provisions of this section shall not include disease or pre-existing disease, except where the disease or pre-existing disease was the natural and direct result of a compensable injury, or the disease or pre-existing disease was contracted by the employe while a member of the Armed Forces of the United States and was sustained in line of duty while the United States was engaged in war. (1946, c. 23, § 1; 1948, c. 64, § 12 [effective June 30, 1948])".

The basic issue presented by this appeal is whether or not the appellee, Thomas Gaffney, was entitled to recover compensation benefits from the Subsequent Injury Fund under the facts adduced before the Workmen's Compensation Board. Collateral issues raised will be resolved during the course of the opinion.

The record discloses that on January 10, 1952, Gaffney sustained an accidental injury to his right eye while at work for the Trojan Construction Company. Prior to this accident Gaffney's vision in his right eye was 20/20, but following this accident, according to medical testimony it was 20/100, without glasses, and 20/50 with glasses. The effect was that, due to his having lost substantially all the sight in his left eye when he was a child, he was unable to perform the duties required of him as a pipe spacer, the position he held with the Trojan Construction Company, and was also incapacitated to re-enter his craft as a watchmaker.

In July 1952, Gaffney filed his application for compensation with the Workmen's Compensation Board, joining the Trojan Construction Company and the Subsequent Injury Fund as parties defendant. He sought compensation benefits for total permanent disability as provided for in KRS 342.095.

Following a hearing upon Gaffney's claim the Compensation Board found that the disability to Gaffney's left eye was not the result of traumatic injury, and entered a ruling of law, as required by KRS 342.275, to the effect that liability for payment of compensation benefits out of the Subsequent Injury Fund was limited to cases where the pre-existing disability of the compensation claimant was caused by trauma. However, the Board found that Gaffney had suffered a compensable injury to his right eye and awarded him compensation against the Trojan Construction Company on the basis of 44% loss of vision to his right eye.

On appeal to the circuit court the award was set aside and the case remanded to the Compensation Board, with these directions:

"(1) That the Board determine as a finding of fact whether plaintiff was permanently totally disabled as a result of his compensable injury, in conjunction with his previous disability.

"(2) If such disability is determined to be permanent partial and not permanent total, then the Board will determine as a finding of fact:

"(a) The extent or percentage of the permanent partial disability suffered by plaintiff as a combined result of his compensable injury and pre-existing disability.

"(b) The extent or percentage of permanent partial disability which plaintiff would have suffered from the compensable injury had he had normal vision in his left eye.

"(3) That the Board then make an award and an apportionment between the defendant, Trojan Construction Company and the Subsequent Injury Fund, based on such findings of fact and in conformity with the opinion of the Court hereinabove referred to."

In reviewing compensation proceedings this court has consistently followed the rule that, in the absence of fraud or mistake, a finding of fact by the Compensation Board is conclusive when supported

by competent evidence of probative value. Bartley v. Bartley, Ky., 274 S.W.2d 48; General Refractories Co. v. Collins, Ky., 272 S.W.2d 471; Tackett v. Eastern Coal Corp., 295 Ky. 422, 174 S.W.2d 707; Consolidation Coal Co. v. Walters, 295 Ky. 396, 174 S.W.2d 690; Tafel Electric Co. v. Scherle, 295 Ky. 99, 173 S.W.2d 810; Black Mountain Corp. v. McGill, 292 Ky. 512, 166 S.W.2d 815. However, it has also been held that if there is no issue of fact, or if the construction of a statute is involved, the question is one of law and is reviewable on appeal by the courts. Three Rivers Oil Corp. v. Harper, 258 Ky. 253, 79 S.W.2d 972; Lawrence Leather Co. v. Barnhill, 249 Ky. 437, 61 S.W.2d 1; Fordson Coal Co. v. Bledsoe, 236 Ky. 409, 33 S.W.2d 302; Broadway & Fourth Avenue Realty Co. v. Metcalfe, 230 Ky. 800, 20 S.W.2d 988; Wells Elkhorn Coal Co. v. Vanhoose, 220 Ky. 381, 295 S.W. 464; Consolidation Coal Co. v. Ratliff, 217 Ky. 103, 288 S.W. 1057; Bates & Rogers Const. Co. v. Allen, 183 Ky. 815, 210 S.W. 467. With these rules to guide us in resolving the issues, we look to the evidence introduced before the Compensation Board.

It appears that Gaffney's duties, as an employe of the Trojan Construction Company, were that of a pipe spacer—skilled labor—which required careful visual inspection of the installations of the sections of the pipeline which his employer was constructing. On January 10, 1952, while Gaffney was engaged in the performance of his work, a sliver of rock, or other debris, struck him in his right eye. Prior to this injury, the vision in Gaffney's left eye had been substantially impaired. We relate the evidence concerning the history of his left eye.

Gaffney, who is now 38 years of age, testified that during his early childhood he suffered an injury to his head which resulted in the loss of the sight of his left eye. His mother testified that she saw her son receive the injury to his head, which resulted in the pupil of his left eye deviating to the corner of the eye.

Dr. Watson Gailey performed an operation on Gaffney's left eye on August 8, 1938, when Gaffney was fourteen years old. Dr. Gailey testified to the effect that the operation was a success from a cosmetic point of view, but the eye had been crossed for such a length of time that there was only a small degree of vision left in it. When he was asked whether the loss of vision in Gaffney's left eye was caused by trauma or whether it was congenital, he answered that it was his opinion that the lack of vision in Gaffney's left eye was due to disuse because of its bad position. He also stated that Gaffney had normal vision in the right eye when he examined Gaffney in the year of 1938.

We think the proof conclusively established that Gaffney was industrially blind in his left eye prior to the time he suffered the injury to his right eye. Thus, to reach a proper conclusion in the case, we review the evidence concerning the injury and disability to Gaffney's right eye.

The testimony of Dr. Frank A. Crowley was to the effect that he examined Gaffney's right eye on January 23, 1952, and found a retinal detachment. He performed an operation on Gaffney's right eye, putting the retina back in its proper place. Dr. Crowley stated that Gaffney's right eye was permanently damaged. He further stated that Gaffney was not industrially blind, but that Gaffney should not engage in any physical work that would cause a sudden jarring of his head, and that he did not believe Gaffney could presently competently perform the duties of a pipe spacer on account of Gaffney's defective vision.

Dr. W. S. Snyder, Jr., testified that he examined Gaffney's eyes on August 25, 1952, and found poor vision in the left eye due to the failure of use. He stated that the visual acuity in the right eye with glasses was 20/50 and without glasses was 20/100, which percentagewise meant that with glasses loss of vision was 16½%, or without glasses, 44% loss of vision. Dr. Snyder further stated that a person with his vision thus impaired would have great

difficulty in doing fine work or skilled labor requiring good vision, and it was his opinion that, considering there was no vision in Gaffney's left eye, such a condition would be translated into 100% permanent disability. When interrogated about Gaffney having received an injury to his head when he was a child, Dr. Snyder said that it was his opinion that such an injury would not cause the eyes to cross.

Following the submission of the case, the Board appointed a medical panel pursuant to the provisions of KRS 342.121, to determine the medical questions in controversy. The medical panel's report and its supplemental report, were wholly unresponsive to the medical questions propounded to it by the Compensation Board, and, therefore, were of no real value to the Board in determining issues pending in the compensation proceeding. Upon application for review of the medical panel's report as provided by KRS 342.121(4), the Board held that the Subsequent Injury Fund was not liable for the payment of compensation to Gaffney, and awarded compensation against the Trojan Construction Company as hereinbefore set forth.

We think the Compensation Board misconstrued the purpose and meaning of KRS 342.120 when it held that the Subsequent Injury Fund was not liable if the employe's previous disability was due to a pre-existing condition not caused by trauma. Such a construction is contrary to the unambiguous language of the statute and its humane purpose to assist partially disabled persons in obtaining employment.

As we construe KRS 342.120, Gaffney was entitled to receive compensation benefits from the Subsequent Injury Fund under the terms of subsection (1), unless under subsection (2) thereof, the permanent disability resulting from the condition of Gaffney's left eye was caused by disease. However, we find no evidence in this case which would authorize the Board to apply the exception stated in subsection (2). Therefore, it is our opinion that the court entered a correct judgment in this case.

Judgment affirmed.