**UNITED ELECTRIC COAL COMPANY,**
Appellant,

v.

**Frank ADAMS et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 9, 1956.

Rehearing Denied March 22, 1957.

Maxwell P. Barret, Hazard, for appellant.

Marcus Mann, Salyersville, for appellees.

SIMS, Judge.

This appeal is from a judgment of the Breathitt Circuit Court affirming an award made by the Workmen's Compensation Board to Frank Adams of $12 a week for 450 weeks, credited by $138.86. The Board further found that Adams did not act unreasonably in refusing to submit to an operation offered him by his employer to correct his injury. There are two questions before us for decision: 1. Was the Board justified in holding Adams was not unreasonable in refusing to submit to the operation; 2. was there testimony to sustain the Board's finding that Adams suffered a 50% partial permanent disability?

It is stipulated both parties had accepted the provisions of the Workmen's Compensation Act, KRS 342.001 et seq., and that the injury was sustained by Adams in the course of his employment. Adams, a coal miner 46 years of age, was employed by appellant Company and it is admitted that while engaged in his duties he fell astride a brace which caused a varicocele of the scrotum to form. Adams testified his injury gives him much pain, prevents him from doing heavy lifting and impairs his working capacity 50%.

The usual work of Adams over the years had been oil and gas well drilling, but for 28 months before the accident he worked as a miner. After the accident he returned to his work in the mine for two months,

was laid off when work became slack and then resumed his job as a well driller. Adams admits his work as an "oiler" in the mine was not as heavy as his work as an oil well driller. He testified that due to the injury he is incapacitated from working on deep wells and fellow workmen have to help or assist him in his work. Due to this injury he could only work about half the time, and he testified he had suffered 50% disability.

The Company relies upon KRS 342.035 (2), the applicable part of which reads:

"* * * No compensation shall be payable for the death or disability of an employe if his death is caused, or if and in so far as his disability is aggravated, caused or continued, by an unreasonable failure to submit to or follow any competent surgical treatment or medical aid or advice."

We have held that an injured employee's refusal to submit to an operation is unreasonable if it appears the operation is of a simple character, not involving serious suffering or danger and will result in substantial physical improvement. But where there is a difference of expert opinion as to the danger or as to the result of such an operation, the injured employee's refusal to submit thereto is not unreasonable. Black Star Coal Co. v. Surgener, 297 Ky. 653, 181 S.W.2d 53; Kentucky-Jellico Coal Co. v. Lee, 289 Ky. 821, 158 S.W.2d 385; Melcher v. Drummond Mfg. Co., 312 Ky. 588, 229 S.W.2d 52. This seems to be the rule followed in other jurisdictions as is seen from an examination of the annotations in 105 A.L.R. 1470.

Drs. L. M. Hall, R. B. Conley and John W. Turner testified for Adams on the hearing before the Board, and Dr. W. H. Pennington testified for the Company. None of the doctors thought the operation would seriously interfere with Adams' sex life. Dr. Hall's testimony was to the effect that the maximum improvement had been

reached short of an operation and he thought a suspensor would take care of the patient and relieve him of the pain of which he complained. He would not recommend an operation without further observation. Dr. Conley's testimony was to the effect that a suspensor was not sufficient to allow Adams to do heavy lifting without pain and he knew of no reason why he should not undergo an operation. Dr. Turner pointed out the difficulty of the operation and said it might "cause distraction of the blood supply and later necessitate complete removal of the testicle. By removing the testicle, varicocele and all, he should get practically complete relief." Dr. Turner further testified he thought the removal of the diseased veins might not completely cure the trouble, but if the veins and the testicle were both removed there was a good chance the patient would get complete relief.

Dr. Pennington, testifying for the Company, thought the operation would give complete relief and stated there was no danger in it if skillfully performed by a surgeon "who knew what he was doing." He did not think the operation was any more dangerous than the usual risk when a patient submits to surgery. We quote from his testimony:

"Just as any operation, if it is not done correctly, it is dangerous. If the blood supply, the arterial supply, or too much of the venous supply is tied off, it is possible that he may have trouble, that he might lose his testicle."

■ From this brief resume of the medical testimony it is patent there is a difference of expert opinion as to whether the operation is dangerous and whether it is necessary. Therefore, under the rule stated in the fifth paragraph of this opinion, and the authorities there cited in support of it, we hold the Board was justified in not requiring Adams to submit to the operation.

■ None of the doctors could, or did, give an opinion as to the extent of Adams' disability, since the same was caused by the subjective symptom of pain and suffering. Adams testified his pain from the injury prevented him from working more than half the time and he was 50% disabled for work. The Company earnestly argues an injured employee is not competent to testify as to the extent of his own disability, citing James v. Elkhorn Piney Coal Mining Co., 277 Ky. 765, 127 S.W.2d 823. Instead of that case supporting the Company, it is directly against the Company's position, as is shown by this quotation taken from 127 S.W.2d at page 825:

"While the medical testimony to the effect that he now has no disability resulting from the accident is strongly persuasive, yet we are not prepared to say there was no evidence to the contrary. Appellant's testimony concerning his condition was competent, and has some probative value."

■ In the instant case the medical testimony was not to the effect that Adams now has no disability but only that the doctors could not fix the extent thereof because the symptoms are purely subjective. All the doctors testified that varicocele veins cause pain. When Adams testified his injury prevented him from working half the time, the Board had evidence of probative value upon which it could, and did, fix his permanent disability at 50%. It is elementary courts cannot disturb the findings of fact by the Board based upon competent evidence of substance and having probative value. Combs v. Gaffney, Ky., 282 S.W.2d 817.

■ The Company further urges that as Adams admitted he did not wear the suspensor, which some of the medical testimony shows would relieve his suffering, he could not be allowed compensation under KRS 342.035(2). Adams' testimony is he wore the suspensor all he could but at times

had to take it off because it blistered and "galled" him. We agree with the Board that in these circumstances Adams was justified in removing the suspensor when the pain of wearing it was greater than the pain it was intended to relieve.

The judgment is affirmed.