## Blue Diamond Coal Co. et al. v. Whitaker et al.

December 10, 1946.

Rehearing denied Feb. 7, 1947.

Craft & Stanfill for appellants.

C. A. Noble for appellees.

OPINION OF THE COURT BY VAN SANT, COMMISSIONER —Reversing.

Appellees, who were shown to have been the dependents of Ambrose Whitaker, filed this claim against appellant, Blue Diamond Coal Company, with the Workmen's Compensation Board, alleging that their decedent received a traumatic injury on July 27, 1944, which resulted in a fatal cerebral hemorrhage. The Referee found the hemorrhage was the result of a pre-existing disease, and denied the claim. On a full Board review, the Referee's opinion was sustained; on appeal to the Perry Circuit Court, the order dismissing the claim was reversed, with the direction that an award be entered in favor of the claimants.

Actions for benefits under the Workmen's Compensation Act are purely statutory and special in their nature. The Act provides that in each case the circuit court and the Court of Appeals must affirm the decision of the Board if there is any evidence of probative value to support it. KRS 342.285; Utley v. Pence, 295 Ky. 673, 175 S. W. 2d 372. The sole question in this case is

whether there was any evidence introduced of probative value which will sustain the Board's conclusion that the hemorrhage was the result of pre-existing disease and not the result of traumatic injury.

At about 3:00 o'clock on the afternoon of July 27, 1944, Whitaker was engaged in his usual occupation for appellant, and was in the act of turning a "bender" used in bending a mine car rail which was to have been laid on a curve in a mine operated by appellant. We gather from the evidence that the bender is in the nature of a winch and that the decedent had made one and a half turns with it, when he suddenly wheeled toward his fellow workman and exclaimed, "Lord have mercy, Hiram, something struck me between the eyes like a bullet." According to the testimony of his fellow workman, a knot appeared on the upper part of the nose between the eyes. This witness testified that Whitaker fell to the ground in a state of unconsciousness. The knot disappeared and consciousness reappeared when the witness massaged the swollen area, but Whitaker again and immediately lapsed into his previous state when the massaging ceased. The mining camp doctor was summoned and arrived in a short period of time, tested Whitaker's blood pressure and found it to be 188 systolic and 100 diastolic; administered a hypodermic to the patient, summoned an ambulance and accompanied the patient to the hospital. Again he took the blood pressure and found that it had decreased sharply, which he testified was an indication that the patient would not recover. Whitaker died that night. There was no evidence that Whitaker was struck by any outward force; but it is contended that the hemorrhage was the result of a strain he received in operating the bender. The rail which he was bending weighed approximately thirty pounds, and there was no testimony to the effect that the work in which he was engaged at the time he was stricken required unusual strain. The only testimony in respect to the cause of the hemorrhage was the testimony of two doctors. The doctor called as a witness by appellees testified that it was his opinion the hemorrhage was the result of a strain sustained by the decedent in operating the bender. The doctor introduced by appellant, who was the doctor who attended him immediately after he was stricken and after he was taken to the hospital, testified that, in

his opinion, the hemorrhage was the result of hypertension (high blood pressure). His opinion is fortified by the report of the blood pressure taken immediately after Whitaker was stricken. Appellees showed that the decedent had not lost any working time from illness, and had never required the professional services of a doctor. Whilst this showing, together with the medical testimony introduced by appellees, might be sufficient to sustain a finding of·the Board that the hemorrhage was the result of a traumatic injury, it is not conclusive of this fact; and the testimony of the attending physician that the hemorrhage was the result of high blood pressure, which it is admitted is an insidious disease of the blood vessels, is sufficient evidence of the Board's finding that the hemorrhage resulted solely from a pre-existing disease. That being true, the Circuit Court should have entered an order affirming the finding of the Board; for which reason the judgment is reversed, with directions that it be set aside and another entered in conformity with this opinion.